PEOPLE *v.* WALBURN.

LARCENY—FELONIOUS INTENT—CONDITIONAL SALE.

Where the assignee of a contract authorizing the vendor to take possession of an organ in case it is not fully paid for takes possession of such organ under the belief that it has not

been fully paid for, he is not guilty of the felonious intent necessary to constitute larceny, although the jury find that the purchase price had been paid.

Exceptions before judgment from Muskegon; Russell, J. Submitted November 21, 1902. (Docket No. 224.) Decided December 16, 1902.

James Walburn was convicted of larceny. Reversed and respondent discharged.

The respondent was convicted of the larceny of an organ. The statement of facts made by the respondent's attorneys is not disputed by the people, and will therefore be taken as correct. It is as follows: In 1898 one Moran, the complaining witness, made a contract with the Farrand-Votey Organ Company for the purchase of an organ through the company's agents, Samuel and Edward Spicer. Moran made several payments upon the organ, and claimed to have had an arrangement with the Spicers by which, when they stopped with him, he was to charge the cost of board and horse-keeping against them, to be applied towards the payment of the organ. This arrangement was denied by the Spicers. He claimed to have a charge against them for this of $11.80. No settlement of such account was ever made. After a part, if not all, of such board bill had accrued, and the original contract was past due, the Spicers and Moran met, agreed upon the amount due upon the old lease at $56.75, and made a new lease therefor. Moran made three cash payments thereafter. The Spicers before this time had paid the organ company in full, but the new lease was made in the name of the organ company. The organ company, at the request of the Spicers, assigned the lease to the respondent. The Spicers paid the organ company for this and other leases or contracts for sale, and borrowed the money from a bank. Afterwards, being in need of money to meet this obligation, they sold this contract or lease to the respondent, who paid them in cash therefor $17.42; being the balance due on the contract, aside from the disputed board bill.

Respondent afterwards drove to Moran's house—17 miles—to secure payment. Moran was not at home, and at the request of Mrs. Moran he drove with her several miles farther to Montague, where she telephoned to Mr. Moran. Soon after Moran went to Fremont, where respondent lived, but did not call upon him, as he had agreed to. Respondent went a second time to see Mr. Moran, but did not find him, as he was absent from home. He started a third time, and met Mr. Moran on the road, and asked him to pay the balance due on the contract. Moran's testimony of the conversation at that time is as follows:

" He says, 'I was just going down to your place.' I says, ' Yes.' He says, ' What about that organ, Patsy?' ' Well,' I says, ' Jim, there is $4.10 due on that organ;' and I says, ' I have the money here to pay for it,'—put my hand in my pocket.' He says, ' Patsy, that is no use to me. I have got to have $17. There is that due on the organ now.' I says, ' Jim, I paid $35, $15, $12, and $15, and $11.80 board bill that the Spicers owed me, and $8.90 interest,—leaves a balance due of $4.10.' ' Well,' he says, ' I don't think they will pay it,—the board bill.' He says, ' I have got to do my duty in regard to this matter. I have got to either have $17 or the organ.' Now, that was the weight of the conversation."

Respondent denies this conversation. The settlement and second lease or contract were ignored by Moran. In his testimony in chief he was not asked by the prosecuting attorney and made no reference to the second lease or agreement, but referred to all his payments as having been made upon the first one. After the several attempts to collect, respondent succeeded in bringing one of the Spicers and Moran together, and tried to have them effect a settlement. Moran then informed them that he had turned the matter over to an attorney, and had nothing to do with it. Subsequently respondent, taking a man with him, went to Moran's house, arriving there about noon. Moran was not at home. He informed Mrs. Moran and her daughter that he had come to take the organ. They

protested, but made no resistance, and he used no violence or force. He told them that he was going to take the organ to Fremont, and that Mr. Moran could come there and settle the matter.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Charles B. Cross,* Prosecuting Attorney, and *George S. Lovelace,* Assistant Prosecuting Attorney, for the people.

GRANT, J. *(after stating the facts).* Several questions are raised upon the admission and exclusion of testimony, the remarks of the prosecuting attorney, and the charge of the court. In the view we take of the case, it is unnecessary to discuss them. We find nothing in the evidence to show that respondent was guilty of the felonious intent necessary to constitute the crime of larceny. If the organ was not fully paid for, respondent was entitled to take possession of it. The criminal intent was made to depend entirely upon the question of whether the jury should find that Moran had fully paid. The theory of the prosecution was that respondent bought this lease for the express purpose of helping the Spicers to escape the payment of this board bill. There is no testimony to establish such claim. Respondent paid the Spicers the full amount due upon the contract. They all so testified, and there is nothing on the record to dispute it. The Spicers wanted money to pay their note at the bank, and asked the respondent to assist them by buying this lease or agreement. There is nothing unnatural about the transaction, or about anything they did. There is nothing in it to show any disposition or wish to defraud anybody. If Moran had a valid agreement with the Spicers to pay for their board, he could have sued them and recovered judgment. It is significant that, when the second lease or contract was executed, nothing was said by Moran to the Spicers about this board bill, part or all of which had then accrued. They then had a settlement to determine the amount due. Evidently

Moran attempted to avoid this settlement by ignoring it and the contract based thereon, and relying upon the first contract. There was a dispute between these parties, which is the proper subject of a civil suit, but not of a criminal one.

The conviction is reversed, and the prisoner discharged.

The other Justices concurred.