PEOPLE v HAWKINS

Docket No. 224336. Submitted April 10, 2001, at Grand Rapids. Decided
April 27, 2001, at 9:00 A.M.

Galen P. Hawkins was convicted following a bench trial in the Kent
Circuit Court, Paul J. Sullivan, J., of uttering and publishing after he
cashed a cashier's check that had been stolen from its drawee. The
defendant appealed, claiming that the trial court erred in admitting
prior bad acts evidence, that defense counsel was ineffective for
failing to object to the admission or the prior bad acts evidence,
and that there was insufficient evidence of intent to defraud to sup-
port the conviction.

The Court of Appeals *held*:

1. The trial court did not err in admitting evidence indicating that
the cashier's check that the defendant presented for payment was
one of four blank cashier's checks that had been stolen from their
drawee and that each had been negotiated by a different person.
That evidence was admissible under MRE 404(b)—which governs
the admissibility of evidence of other crimes, wrongs, or acts—
because it was relevant and was not unfairly prejudicial to the
defendant. The evidence was relevant to the issue whether the
defendant knew that the check was false. The evidence was not
unfairly prejudicial to the defendant inasmuch as it was equally
consistent with the defendant's theory of the case that he was an
innocent person who was tricked by another into chasing the
check and with the prosecution's theory that the defendant had
been part of a ring that cashed stolen checks. Moreover, the trial
court's factual findings on the record indicate that the trial court
relied on the evidence that the check at issue was one of several
stolen checks only when considering whether the check at issue
was false, altered, forged, or counterfeit in such a manner that the
defendant could be convicted of uttering and publishing.

2. The prosecution's failure to comply with MRE 404(b)(2),
which requires advance notice by the prosecution of its intent to
introduce prior bad acts evidence at trial, does not require reversal
of the defendant's conviction. Reversal of a conviction is warranted
for such a violation only where the defendant is actually innocent

or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Neither was the case here.

3. Because the prior bad acts evidence was admissible, the defendant's claim that his trial counsel rendered ineffective assistance by failing to object to the prior bad acts evidence must fail. A trial attorney need not register a meritless objection to act effectively.

4. There was sufficient evidence of the defendant's intent to defraud to suppport the defendant's conviction. A prosecution witness, whom the defendant had asked to type in names and a date on a blank cashier's check, had told the defendant that she suspected that the check was not good, yet the defendant filled in the blanks on the check in his handwriting, placed initials suggesting approval by the bank, and presented the check for payment.

Affirmed.

1. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

2. EVIDENCE — OTHER ACTS — PROSECUTORS' NOTICE.

A prosecutor must give advance notice of intent to introduce other acts evidence at trial; the failure to do so requires the reversal of a defendant's conviction where the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

3. CRIMINAL LAW — UTTERING AND PUBLISHING.

Uttering and publishing consists of three elements: knowledge on the part of the defendant that the instrument was false, an intent to defraud, and presentation of the forged instrument for payment (MCL 750.249).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *David M. LaGrand*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Deborah W. Keene*), for the defendant on appeal.

Before: HOEKSTRA, P.J., and WHITBECK and COOPER, JJ.

PER CURIAM. Defendant Galen Hawkins appeals as of right his conviction of uttering and publishing[1] for cashing a stolen cashier's check. The trial court, following a bench trial, sentenced Hawkins as a fourth-offense habitual offender[2] to a prison term of 2 1/2 to 20 years. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The prosecutor and Hawkins had conflicting theories of this case. From the prosecutor's perspective, Hawkins uttered and published a false, forged, altered, or counterfeited check dated April 22, 1998, in the amount of $9,500. Hawkins conceded that he presented an Old Kent Bank cashier's check in the amount of $9,500, introduced at trial as exhibit one, which he made payable to himself. He claimed, however, that he did not know that anything was wrong with the check. Consequently, Hawkins contended that he was not guilty of uttering and publishing because he lacked the requisite intent to defraud.[3]

Alice Wood, a teller at the Old Kent Bank branch located at Franklin and Eastern in Grand Rapids,

---

[1] MCL 750.249.

[2] MCL 769.12.

[3] MCL 750.249 states:

> Any person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in the preceding section, *knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud* as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years. [Emphasis added.]

recounted that someone presented exhibit one to cash it. Wood could not identify the person who presented the check, nor could she say specifically when this occurred. However, she was able to confirm that exhibit one was the check presented to her because, she explained, Hawkins' driver's license number appeared on the back of the check in her handwriting, where she had written it to identify him as the person who cashed the check. Wood noted that the check was unusual because the drawer's and the payee's names on the front were handwritten, not typewritten. Though Wood said that she ordinarily needed to obtain approval from her manager before cashing a check this large, she did not seek management approval in this case because the initials in the corner of the check indicated to her that it had already been approved for cashing. Wood gave the man presenting the check $9,500 in bills with large denominations, such as $100 bills. The man, however, handed $500 back to her and asked for smaller bills. Before Wood could give the man $500 in smaller bills, the bank manager, Rene Buggs, approached the man and they began talking and walking out of the building.

Buggs, who stated that this incident occurred on April 24, 1998, explained that she approached the man because Marian Barrera-Young had called her to warn her that a gentleman had come into the business where she worked, the Baxter Neighborhood Association, asking to use a typewriter to fill in the "pay to the order of" line on an undated and uninitialed check for a large amount of money. Barrera-Young, who also testified at the trial, thought this was suspicious. She asked Hawkins how he knew the

check was "good" and he explained that the check was partially blank because this was a common way for him to be paid for contracting work. When Barrera-Young asked him who had signed the bottom of check as its drawer, Hawkins first glanced at a piece of paper before he said, "Roberts," a name that did not appear on the check. These factors all made Barrera-Young suspicious of Hawkins. Consequently, she said, she made Hawkins "aware" of her suspicions, she suggested that he take the check to the bank to type the payee's name, and she called Buggs immediately.

Following the telephone call, Buggs saw that there was only one customer in the bank, the man at Wood's teller window. Buggs, who later identified Hawkins as that customer, confirmed that Wood had already cashed the check and was counting out the smaller bills totaling $500 when she approached Hawkins. Buggs recalled that she told Hawkins that there was a possible problem with the check and that she needed him to return the money. She did not tell Hawkins that she suspected that he had stolen the check, because she feared that she would not be able to reclaim the $9,000 from him. Rather, she told Hawkins that he would have to take the check to the issuing bank, presumably the Old Kent Bank branch at Kalamazoo and 44th Street.

According to Buggs, after she asked him to return the money, Hawkins walked to the drinking fountain and started to "inch" his way to the door. Buggs "inched" along with him, trying to convince him to exchange the money he had received for the check. Buggs followed Hawkins out of the bank and continued to talk to him in an attempt to convince him to

exchange the money for the check, all to no avail. At one point, Buggs stood in front of Hawkins and put her hand out to stop him, but he told her not to touch him. Buggs then advised Hawkins that she was calling the police and returned to the bank.

Melissa Richardson, an assistant branch manager at the Old Kent Bank branch at Kalamazoo and 44th Street in Grand Rapids, testified at trial that she had inspected the bank's stock of "official" checks[4] and found that four checks were missing. Exhibit one, which bore the number 1432596875, was one of the missing checks. From Richardson's perspective, exhibit one was unusual because both the payee's and the maker's names were handwritten, not typed as was the ordinary practice with these checks. Additionally, Richardson explained, the bank teller who issued the check would ordinarily sign for the bank, but for a check in an amount as large as $9,500, a member of the bank's management would sign the check. In the case of exhibit one, the initials needed to cash the check were in the proper place, but Old Kent Bank had not been able to identify who initialed the check. When shown exhibit one in court, Buggs stated that it was the check Hawkins had presented at the bank, that she did not authorize acceptance of the check, and that she did not recognize initials on the check. Furthermore, Buggs and Wood both identified themselves and Hawkins at the bank in a photograph bearing an April 24, 1998, date stamp.

Detective Philip Porter of the Grand Rapids Police Department, who investigated Old Kent Bank's com-

---

[4] Evidently, she was referring to what are commonly known as cashier's checks, for which banks guarantee payment.

plaint that four checks had been stolen from the branch at Kalamazoo and 44th Street and presented at various branches in Grand Rapids, recovered two original checks and two copies of the stolen checks, including exhibit one. When the prosecutor showed Detective Porter one of the other stolen checks, Detective Porter testified that there were some similarities between the four checks and that two of the checks, including exhibit one, listed Tim Roberts as the drawer. The other stolen check bearing Tim Roberts' name as the drawer was presented for payment on April 23, 1998. Detective Porter stated that a different person presented each of the stolen checks for payment and that the check at issue differed from the other three stolen checks. Specifically, the drawer's name, the drawee's name, and the date were handwritten on the check at issue in this case while this information had been typed on the other checks.

Defense witness Sheila Darling, who was dating Hawkins at the time of the trial but not in April 1998, testified that she worked at Old Kent Bank processing checks. She agreed that it would be unusual to see a handwritten cashier's check. However, contrary to the prosecution witnesses' suggestion that handwritten cashier's checks indicated a problem with the draft, Darling stated that her trainer at Old Kent Bank had instructed her that handwritten cashier's checks were acceptable and had to be processed as usual.

Hawkins testified in his own defense and contended that he had obtained the check from a friend, Jimal Clark, who wanted Hawkins to cash it. According to Hawkins, Clark explained that the check was for roofing work. Clark reportedly asked the person from whom he obtained the check not to list him as a

payee because he (Clark) did not have the identification necessary to cash the check. Hawkins said that, because he had been previously prosecuted for uttering and publishing, he wanted to make sure he would not do anything illegal if he cashed the check.

Consequently, Hawkins said, Clark drove him to the Baxter Neighborhood Association where he asked Barrera-Young to type his name as payee, to type the drawer's name, and to type the date to make the check look more authentic. Hawkins said that he explained the situation to Barrera-Young and when Barrera-Young asked him what name to type for the drawer, he pulled a piece of paper from his pocket and told her "Tim Roberts," the name Clark had given to him. Next, Barrera-Young telephoned someone and asked if the check needed to be typed or if it could be handwritten. Barrera-Young then told him that nothing appeared wrong with the check but that he needed to return to the bank where he obtained the check to have bank personnel fill in the information. Hawkins left the Baxter Neighborhood Association with Clark and headed straight to the Old Kent Bank at Franklin and Eastern. On the way, he said, he completed the check by hand, filling in the date, his name as the payee, and Tim Roberts as the drawer. Hawkins admitted that "looking at this in hindsight, obviously, there isn't a Tim Roberts." However, he denied that he wrote the initials indicating bank approval on the check.

On appeal, Hawkins argues that he is entitled to a new trial because the trial court erroneously admitted the evidence that he had previously committed uttering and publishing, his trial counsel was ineffective for failing to object to this prior bad acts evidence,

and there was insufficient evidence of his knowledge and intent for conviction.

## II. PRIOR BAD ACTS EVIDENCE

### A. PRESERVATION AND STANDARD OF REVIEW

Hawkins failed to preserve this issue for appeal by raising it in the trial court. Thus, our review is for plain error affecting Hawkins' substantial rights.[5]

### B. RELEVANCE AND PREJUDICE

MRE 404(b)(1) governs a trial court's decision to admit or exclude prior bad acts evidence, providing:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The majority in *People v VanderVliet*,[6] set out a four-legged test for a court to follow when determining whether to admit prior bad acts evidence at trial. Prior bad acts evidence is admissible if: (1) a party offers it to prove "something other than a character to conduct theory" as prohibited by MRE 404(b); (2) the evidence fits the relevancy test articulated in MRE 402, as "enforced by MRE 104(b)"; and (3) the

---

[5] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

[6] *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

balancing test provided by MRE 403 demonstrates that the evidence is more probative of an issue at trial than substantially unfair to the party against whom it is offered, defendant in this case.[7] A fourth factor articulated in *VanderVliet*, which does not fully conform to the idea of a test expressed in the preceding three factors, suggests that a party may request a limiting instruction under MRE 105 if the trial court decides to admit the challenged evidence.[8] The Michigan Supreme Court revisited MRE 404(b) recently in *People v Sabin (After Remand)*,[9] emphasizing not only that *VanderVliet* continues to state the law accurately,[10] but that MRE 404(b) is a rule of inclusion and courts should adopt a flexible approach when ruling on the admissibility of prior bad acts evidence.[11]

Hawkins argues that the evidence that other bad checks had been passed at Grand Rapids banks fails the second leg of the *VanderVliet* test because the evidence was irrelevant.[12] We disagree. As the Supreme Court recognized in both *VanderVliet*[13] *and*

---

[7] *Id.* at 74-75.

[8] *Id.* at 75.

[9] *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000).

[10] *Id.* at 55-56, 58.

[11] *Id.* at 56-59.

[12] Though MRE 404 does not explicitly require that the prior bad acts be prior bad acts that the defendant committed, we must acknowledge that this case does not present a routine example of prior bad acts evidence. Specifically, the prosecutor never contended that Hawkins was the person who passed these other false checks. Only through the implication that he was somehow associated with these other "bad" people do we see how this evidence could have portrayed him in a negative fashion, a subject he does not explore in his brief on appeal. Thus, we assume for the sake of analysis that the evidence he challenges on appeal fits the model of prior bad acts.

[13] *VanderVliet, supra* at 74.

*Sabin (After Remand)*,[14] relevance is the critical threshold issue in determining admissibility under MRE 404(b). " 'Relevant evidence' means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[15]

In this case, the prosecutor first introduced evidence that exhibit one was stolen along with other checks to demonstrate how Old Kent Bank learned that it was missing checks. According to Richardson, prompted by a telephone call from a gentleman informing her that an employee was attempting to pass stolen checks, she compared the stock of checks to Old Kent Bank's records and discovered that exhibit one was missing at the same time she discovered the other missing checks. As the Supreme Court said in *People v Delgado*:[16]

> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence.

The evidence used in this way was also relevant to proving that exhibit one was visibly "false, forged, altered or counterfeit[ed]" because it demonstrated

---

[14] *Sabin (After Remand)*, *supra* at 56-57.

[15] MRE 401 (emphasis added).

[16] *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).

that Old Kent Bank did not issue the check, contrary to the defense theory that exhibit one gave no outward indication that it was somehow invalid.[17] In other words, the prosecutor introduced the evidence that these checks had been stolen from Old Kent Bank because it fit with the testimony that Hawkins wrote the information on the front of the check. This had the tendency to prove that Hawkins knew that he was presenting a false or forged check when he approached Wood at the bank. This evidence was not aimed at proving that Hawkins must have committed the crime because he had a bad character, the prohibited purpose underlying MRE 404(b).[18]

We agree that Detective Porter's testimony concerning his investigation of the other stolen checks had less relevance in this case. As Hawkins points out, the prosecutor used the evidence that other checks had been stolen and passed at about the same time in Grand Rapids to imply that Hawkins was part of a larger group of people passing bad checks.[19] However, as with Richardson's testimony, much of Detective Porter's testimony simply related the facts of his investigation, which dealt with all four checks, not just exhibit one. Because of the actual and logical connection between all four checks, it would have been difficult for Detective Porter to separate the por-

---

[17] See *VanderVliet, supra* at 75 ("The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs [sic] what is relevant and material.").

[18] *People v Rice (On Remand)*, 235 Mich App 429, 440; 597 NW2d 843 (1999) ("A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense.").

[19] If Hawkins intended to argue that the prosecutor committed misconduct in making this argument, he failed to present such an issue for appeal. See MCR 7.212(C)(5).

tions of his investigation that related solely to exhibit one.[20] His testimony also was relevant to show the false nature of the check Hawkins passed. Further, not only does Hawkins concede that evidence of these other checks was relevant to his involvement in a scheme or plan, this Court recently held that evidence of the "underlying . . . fraud" in which a defendant participates is "material and sufficiently probative of whether defendant had the requisite knowledge and fraudulent intent required for conviction on the charge of uttering and publication."[21]

Nevertheless, Hawkins contends that, even if relevant, the evidence of these other checks was inadmissible because it was substantially more prejudicial than probative. MRE 403, which is incorporated in the third leg of the *VanderVliet* test,[22] states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The evidence of the stolen checks was not unfairly prejudicial to Hawkins because it was equally consistent with his theory of the case—that he was an innocent person who had been tricked—as it was with the prosecutor's theory that Hawkins was part of a check-cashing ring. In fact, defense counsel elicited from Detective Porter testimony that the other three stolen checks were cashed by three different people. This testimony suggested that the person or persons

---

[20] *Delgado, supra.*

[21] See *People v Aguwa*, 245 Mich App 1, 7; ___ NW2d ___ (2001).

[22] *VanderVliet, supra* at 74-75.

responsible for stealing the checks might have been recruiting other people, possibly innocent individuals, to help cash the checks, consistent with Hawkins' theory of the case. At defense counsel's questioning, Detective Porter also explained that the three other checks differed from exhibit one because the other checks were typed, not handwritten. This had the potential to suggest to the factfinder, the trial court, that Hawkins was not a part of the check-cashing ring that Detective Porter was investigating because Hawkins did not use the same technique when preparing the check. Contrary to Hawkins' argument, this evidence was neither so naturally inflammatory nor used so pervasively at trial that we should presume that the prejudice flowing from this evidence unfairly and substantially outweighed its probative value. Thus, the trial court did not commit plain error by admitting this evidence.

Moreover, we presume that the trial court, well-versed in the rules of evidence, acted consistently with its duty and did not use the evidence to draw any improper inferences.[23] The trial court's factual findings on the record[24] indicate that the trial court relied on the evidence that the check at issue was one of several stolen checks only when considering whether exhibit one was "false, altered, forged or counterfeit." Thus, because the trial court used this evidence in a limited and proper way, we do not see any negative effect on the "fairness, integrity, or public reputation" of the trial that would require reversing Hawkins' conviction on this basis.

---

[23] *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992).

[24] See MCR 6.403.

### C. NOTICE

Hawkins also argues that this evidence was inadmissible because the prosecutor failed to give notice in advance of trial that he intended to elicit testimony concerning the other checks. MRE 404(b)(2) provides in relevant part:

> The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

The prosecutor has not justified the failure to give this notice and, on appeal, does not make any argument concerning notice. Assuming that this was prior bad acts evidence,[25] this failure to give notice is plain error because the court rule unambiguously requires notice to the defense at some time *before* the prosecutor introduces the prior bad acts evidence. *People v Carines*[26] makes clear that we should reverse only if Hawkins "is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."

Case law aids us little here because it fails to put into perspective whether this sort of notice error is relatively more or less serious than other errors that may occur during trial but do not require reversal. We find some guidance in *Sabin (After Remand)*. According to the majority in that case, the Supreme Court amended MRE 404(b) to include the notice

---

[25] See n 12, *supra*.

[26] *Carines, supra* at 774.

requirement in subsection 2 following the *VanderVliet*
decision "to assist the trial court in its evidentiary rul-
ing"[27] and "to ensure that the defendant is aware of
the evidence."[28] At its best, the hearing and argument
that ordinarily ensues once a prosecutor gives notice
"provide an enlightened basis for the trial court's
determination of relevance and decision whether to
exclude the evidence under MRE 403."[29] Although he
was one of the two dissenting justices in *Sabin (After
Remand)*, Justice CAVANAGH explained that one of the
goals of this procedural safeguard is to ensure that a
prosecutor articulates the proper purpose behind
admitting the prior bad acts evidence.[30] This advance
notice gives the trial court and the defense an oppor-
tunity to test the genuine value of the evidence and
limits a prosecutor's ability to articulate the relevant
grounds for admission listed in MRE 404(b)(1) in an
effort to obscure the improper purposes truly under-
lying the evidence.[31] In summary, while phrased dif-
ferently, the dissent and the majority in *Sabin (After
Remand)* appear to agree that the essential value and
underlying aims of MRE 404(b)(2) are (1) to force the
prosecutor to identify and seek admission only of
prior bad acts evidence that passes the relevancy
threshold, (2) to ensure that the defendant has an
opportunity to object to and defend against this sort
of evidence,[32] and (3) to facilitate a thoughtful ruling

---

[27] *Sabin (After Remand)*, *supra* at 57, n 5.

[28] *Id.* at 59, n 6.

[29] *Id.*

[30] *Id.* at 76.

[31] *Id.* at 77.

[32] See *People v Lemcool (After Remand)*, 445 Mich 491, 498; 518 NW2d
437 (1994), quoting *VanderVliet*, supra at 89, n 51 ("A notice requirement

by the trial court that either admits or excludes this evidence and is grounded in an adequate record.

With these aims in mind, several factors convince us that the prosecutor's failure to give notice of this evidence was plain error, but not error of the sort that requires us to reverse Hawkins' conviction. First, the evidence at issue was relevant and not substantially more prejudicial than probative. Because this evidence was admissible, notice to Hawkins would not have had any effect on whether the trial court should have admitted it at trial, regardless of the record or arguments that could have been developed and articulated following notice. Consequently, this case does not invoke the Supreme Court's concern that, without notice, the prosecutor was able to use irrelevant, inadmissible prior bad acts evidence to secure Hawkins' conviction.

This does not mean that a failure to give notice will always be harmless error if the evidence was eventually determined to be admissible. Rather, and this brings us to the second factor, the harmless error standard requires us to consider the effect plain error has on a proceeding. Because Hawkins has never suggested how he would have reacted differently to this evidence had the prosecutor given notice, we have no way to conclude that this lack of notice had any effect whatsoever. For instance, Hawkins has not suggested or created a record that would suggest that, had he known the prosecutor intended to introduce this evidence, he would have called another witness to testify, that his attorney would have objected to

prevents unfair surprise and offers the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice.").

the evidence, or that he would have provided other evidence to counter the prior bad acts testimony.

Finally, *People v Ullah*,[33] a 1996 case this Court decided before the Supreme Court decided *Sabin (After Remand)*, relied on the lack of evidence of notice in addition to four other factors that persuaded it that the defendant was entitled to a new trial after the trial court allowed the jury to hear prior bad acts evidence. The totality of the circumstances present here do not reveal problems that are the same or analogous to the problems in *Ullah*. In contrast to *Ullah*, the evidence in this case was relevant, there is no suggestion from the record that the prosecutor attempted to rely on an improper purpose to justify admitting the evidence, the evidence was not substantially more prejudicial than probative, there was no jury, and the trial court, acting as factfinder, did not give this evidence undue weight. Accordingly, while lack of notice may be adequate to warrant reversal in some cases, the lack of notice in this case lacked the significant effect, either alone or in concert with other factors, to warrant reversing Hawkins' conviction and granting him a new trial

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Hawkins argues that he was denied the effective assistance of counsel because his trial attorney did not object to this prior bad acts evidence. We dispense with an in-depth analysis of this argument in light of our conclusion that this evidence was admis-

---

[33] *People v Ullah*, 216 Mich App 669, 674; 550 NW2d 568 (1996).

sible. A trial attorney need not register a meritless objection to act effectively.[34]

IV. SUFFICIENCY OF THE EVIDENCE

A. PRESERVATION AND STANDARD OF REVIEW

Hawkins claims that the evidence was insufficient to sustain his conviction. He did not need to take any special steps to preserve this issue for appeal.[35] By his argument, he invokes his constitutional rights to due process of law.[36] Thus, review is de novo for this constitutional issue.[37]

B. ANALYSIS

The evidence in a bench trial is sufficient if, when viewed in the light most favorable to the prosecutor, a rational factfinder could determine that each element of the crime had been proved beyond a reasonable doubt.[38] Uttering and publishing consists of three elements: "(1) knowledge on the part of the defendant that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment."[39] Hawkins only challenges the evidence of this second element, his intent to defraud, contending that he did not know that the check was false and, therefore, could not have intended to defraud Old Kent Bank.

---

[34] *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

[35] See *People v Lyles*, 148 Mich App 583, 594; 385 NW2d 676 (1986).

[36] *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); see also US Const, Am XIV; Const 1963, art 1, § 17.

[37] *People v Houstina*, 216 Mich App 70, 73; 549 NW2d 11 (1996).

[38] *People v Petrella*, 424 Mich 221, 268-270; 380 NW2d 11 (1985).

[39] *People v Shively*, 230 Mich App 626, 631; 584 NW2d 740 (1998).

A factfinder can infer a defendant's intent from his words[40] or from the act, means, or the manner employed to commit the offense.[41] In other words, a defendant's intent can be proved by circumstantial evidence.[42] There is ample evidence on the record supporting the trial court's conclusion that the prosecutor proved beyond a reasonable doubt that Hawkins knew that the check was false. That Hawkins attempted to use Barrera-Young's typewriter to fill in the blanks on the check permits an inference that he knew that cashier's checks are ordinarily typewritten, that he knew his was not, that he knew that a handwritten cashier's check would draw attention, and that he did not want to draw attention to his check because it was not genuine. Especially telling was the fact that the evidence suggests that Hawkins wrote initials on the face of the check to avoid having to obtain manager approval to cash the check.

The trial court also heard the evidence that Barrera-Young told Hawkins that she was suspicious about the check and that he still completed it by hand on the way to the bank. With this evidence, the trial court was also entitled to determine that, even if a friend did give Hawkins the check or he otherwise received it legitimately while lacking the requisite knowledge that it was false, forged, altered, or counterfeit, Hawkins knew that the check was not genuine by the time he presented it to Wood. In other words, the trial court could have concluded from the evidence that Hawkins developed the intent to defraud as he was walking into the Old Kent Bank even if the

---

[40] *People v Mack*, 112 Mich App 605, 611; 317 NW2d 190 (1981).

[41] *People v Leach*, 114 Mich App 732, 735; 319 NW2d 652 (1982).

[42] *People v Safiedine*, 163 Mich App 25, 29; 414 NW2d 143 (1987).

trial court believed Hawkins' claim that he had no reason to suspect that anything was wrong with the check when he went to see Barrera-Young. Further, though Hawkins testified about his innocent intent and lack of knowledge, this case presents a credibility contest, which the trial court was best equipped to resolve on the basis of its firsthand observations.[43]

Affirmed.

---

[43] *People v Daniels*, 172 Mich App 374, 378; 431 NW2d 846 (1988).