# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON BARRETT,

Defendant-Appellant.

UNPUBLISHED
January 17, 2017

No. 328775
Wayne Circuit Court
LC No. 15-001491-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DERRICK LEE BASSETT,

Defendant-Appellant.

No. 328933
Wayne Circuit Court
LC No. 15-000325-01-FC

---

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, defendants Aaron Barrett and Derrick Lee Bassett each appeal as of right their convictions entered after a joint bench trial. The trial court convicted both defendants of carjacking, MCL 750.529a, and also convicted Barrett of armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced Barrett to concurrent prison terms of 5 to 20 years for the robbery and carjacking convictions along with a consecutive two-year term of imprisonment for the felony-firearm conviction. The court sentenced Bassett to 9 to 20 years in prison for his carjacking conviction. We affirm in both appeals.

## I. FACTUAL BACKGROUND

The victim, Kevin Carter, was acquainted with defendants, who are cousins, through his friendship with their uncles. According to Carter, he met up with defendants to give them a ride at their request. When he arrived, he saw that Barrett had an AK-47 assault rifle inside one leg

of his pants. When Carter refused to let Barrett bring the weapon into the car, Barrett pulled it out, pointed it at Carter, and removed the car keys from the ignition. During the incident, Bassett urged Barrett to "Give him the K" and added, "It can go down right here." Carter ran away, leaving his cell phone behind inside the car, and defendants took the car. Both the phone and the vehicle were later recovered.

Contrary to Carter's testimony, Bassett testified that Carter loaned him the car for three hours in exchange for cocaine. Bassett explained that when he took the car, he found Carter's phone inside. Bassett used the car and then abandoned it after learning that it had been reported as stolen. Barrett did not testify at trial.

The trial court found defendants guilty of the offenses previously noted. Although the trial court found that Carter knew defendants "better than he let on," it also concluded that defendants robbed Carter at gunpoint and, even though they did not intend to permanently deprive Carter of the car, they intended to take it for as long as they needed it.

## II. SUFFICIENCY OF THE EVIDENCE

Both defendants challenge the sufficiency of the evidence, claiming that the prosecutor failed to prove that they acted with the felonious intent necessary to sustain the robbery and carjacking convictions. We reject defendants' claims.

## A. STANDARD OF REVIEW

In *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), we addressed a sufficiency of the evidence claim in the context of a bench trial, explaining:

We review claims of insufficient evidence de novo When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [Citations and footnote omitted.]

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Id*. at 622 (citations omitted).

## B. ANALYSIS

The crimes of robbery and carjacking are similar. A robbery occurs when a person, while "in the course of committing a larceny of any money or other property," uses force or violence against another person, or assaults or puts that person in fear. MCL 750.530(1). The phrase "in the course of committing a larceny" is defined to "include[] acts that occur in an attempt to

commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2). The offense constitutes an armed robbery when the defendant possesses a weapon or represents that he or she is armed. MCL 750.529. As a result of the larceny element of armed robbery, it is "a specific intent crime, and the prosecutor must establish that the defendant intended to permanently deprive the owner of property." *People v Lee*, 243 Mich App 163, 168; 622 NW2d 71 (2000). See also *People v Harverson*, 291 Mich App 171, 177-178, 178 n 2; 804 NW2d 757 (2010) (discussing the same requisite intent for unarmed robbery and noting that it is the same for armed robbery); *People v Cain*, 238 Mich App 95, 119-120; 605 NW2d 28 (1999) (discussing the felonious intent required for larceny).

A carjacking occurs when a person, while "in the course of committing a larceny of a motor vehicle[,] uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle . . . ." MCL 750.529a(1). The phrase "in the course of committing a larceny of a motor vehicle" is defined similarly to "in the course of committing a larceny" under MCL 750.530(2), as the phrase "includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle." MCL 750.529a(2). Before MCL 750.529a was amended by 2004 PA 128, we had held that carjacking was a general intent crime. *People v Davenport*, 230 Mich App 577, 580-581; 583 NW2d 919 (1998). However, the current language of the statute as well as the model jury instructions indicate that, like robbery, carjacking is now a specific intent crime. Notably, the model jury instructions for robbery, armed robbery, and carjacking each (1) provide that an element of the offense is that the defendant "was in the course of committing a larceny," (2) use the same definition of larceny (*i.e.*, that "[a] 'larceny' is the taking and movement of someone else's [property or money/motor vehicle] with the intent to take it away from that person permanently"), and (3) cross-reference the same explanation for what it means to "take it away from that person permanently." M Crim JI 18.1 (armed robbery); M Crim JI 18.2 (unarmed robbery); M Crim JI 18.4a(3) (carjacking).[1]

The specific intent to permanently deprive the owner of his or her property "does not require, in a literal sense, that a thief have an intent to permanently deprive the owner of the property." *Harverson*, 291 Mich App at 178. Rather, it includes, *inter alia*, "the retention of property without the purpose to return it within a reasonable time," *id.*, or taking other action inconsistent with the owner's right to possession, *People v Jones*, 98 Mich App 421, 425-426; 296 NW2d 268 (1980). Consistent with this understanding, we held in *Jones* that the evidence was sufficient to prove a larceny when the evidence showed that the defendant and his

---

[1] While we recognize that some unpublished—and nonbinding, MCR 7.215(C)(1)—opinions issued by this Court after the carjacking statute was amended have continued to refer to carjacking as a general intent crime, these opinions have relied on preamendment caselaw in doing so.

accomplice ran out of the store with a ring without paying for it, but left it in the parking lot, where it was found—and ultimately returned—by a Good Samaritan. *Id.* at 423-426.

Intent may be inferred from circumstantial evidence, including a defendant's "words or . . . the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (citations omitted). Notably, again, "only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *Harverson*, 291 Mich App at 178. See also *Kanaan*, 278 Mich App at 622.

The evidence in this case, viewed in a light most favorable to the prosecution, showed that Barrett, aided and abetted by Bassett, took Carter's car at gunpoint when he refused to give them a ride to the store. Most significantly, defendants' acts of taking the car after threatening Carter at gunpoint, and grabbing the keys out of the ignition before Carter ran from the scene, support a finding of an intent to act inconsistently with Carter's right to possess the property and an intent to retain the "property without the purpose to return it within a reasonable time." See *Harverson*, 291 Mich App at 178; *Hawkins*, 245 Mich App at 458; *Jones*, 98 Mich App at 425-426. Likewise, the evidence supports the trial court's finding that defendants may not have intended to keep the car permanently, but they did intend to keep it for an indefinite period of time, *i.e.*, as long as they needed it. Although it is unclear how long defendants kept the car, Carter's and Bassett's testimony both indicate that defendants abandoned it *only* because they found out that the vehicle had been reported stolen, and the car was not recovered until four days after it was taken.

Additionally, Carter's phone was in the car when defendants drove away, and defendants retained the phone for a short period of time before giving it to a third person, who ultimately returned it to Carter. Neither defendant returned the phone to Carter himself, and there is no evidence that one or both of them gave the phone to the third person specifically intending that the third person would return it to Carter.[2]

Thus, viewing the evidence in the light most favorable to the prosecution, the record includes sufficient circumstantial evidence to prove beyond a reasonable doubt that defendants acted with the requisite intent at the time that they took the car to sustain their carjacking convictions and Barrett's armed robbery conviction.[3] See *Harverson*, 291 Mich App at 178; *Kanaan*, 278 Mich App at 618-619, 622; *Jones*, 98 Mich App at 425-426.

---

[2] Notably, defendant Bassett made no reference to returning the phone when he testified at trial, only noting during his testimony that Carter's phone was in the car after Carter let him borrow the vehicle by himself.

[3] Defendants' reliance on *People v Walburn*, 132 Mich 24; 92 NW 494 (1902), in support of their claim that felonious intent was not proved in this case, is misplaced. A close reading of that case reveals that the defendant was acting under a claim of right. See *id.* A claim of right negates felonious intent when the claim is bona fide "and not a mere cover for a felonious taking." *People v Karasek*, 63 Mich App 706, 710-711, 713; 234 NW2d 761 (1975) (quotation marks and citation omitted). See also *Cain*, 238 Mich App at 118-119 (discussing a claim of

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Bassett, both through counsel and in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, argues that he is entitled to a new trial on the basis of ineffective assistance of counsel. We disagree.

## A. STANDARD OF REVIEW

Because Bassett did not raise this issue in the trial court through a motion for a new trial or evidentiary hearing, and we denied his motion to remand,[4] our review of this issue is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [*People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (quotation marks and citations omitted).]

"A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

"This Court will neither substitute[] its judgment for that of counsel regarding matters of trial strategy, nor make[] an assessment of counsel's competence with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013) (quotation marks and citation omitted; alterations in original). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

## B. ANALYSIS

right defense). This case does not involve a claim of right, and *Walburn* did not involve circumstances akin to this case. Likewise, the *Walburn* Court's holding that felonious intent was absent in that case was based on the defendant's right to possess the property, not because the defendant disclosed the property's location to the victim or because the defendant did not keep the property for an unreasonable amount of time.

[4] *People v Bassett*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket No. 328933).

Bassett contends that counsel was ineffective because he did not call witnesses or present cell phone text messages to corroborate Bassett's claim that Carter willingly loaned him his car in exchange for drugs. Bassett further argues in his Standard 4 brief that counsel was ineffective for failing to impeach a certain aspect of Carter's testimony with a police report.

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy . . . ." *Dunigan*, 299 Mich App at 589-590. Likewise, decisions regarding how to cross-examine and impeach witnesses are also matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Ineffective assistance of counsel may be established by defense counsel's failure to present evidence or to call witnesses if the failure deprives the defendant of a substantial defense. *Dunigan*, 299 Mich App at 589; *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Additionally, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *Lane*, 308 Mich App at 68.

There is nothing in the record to support Bassett's claim that anyone was present when the loan agreement was made or later discussed over the phone. To the contrary, Bassett's testimony indicated that he and Carter were alone using drugs in the kitchen because other people present in the house did not use cocaine. Nor is there anything in the record to indicate that Bassett and Carter exchanged text messages. Both men testified only to making and receiving speaking calls. The only text message identified was one from Barrett warning Carter not to "tell on" Bassett.

Bassett has attempted to substantiate his ineffective assistance claim by proffering on appeal an "affidavit" attesting to the existence of witnesses and text messages. However, the "affidavit" submitted with Bassett's brief is not signed by him or notarized, and "a document that is not notarized is not a 'valid affidavit.' " *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005). Further, it would be improper for us to consider the "affidavit" because it is not part of the lower court record and, therefore, constitutes an impermissible expansion of the record on appeal. *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009); *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). And, even if we were to consider the affidavit, it does not identify the individuals who allegedly witnessed Bassett's agreement with Carter or what text messages were allegedly exchanged between Bassett and Carter, and Bassett has not submitted affidavits from any other witnesses indicating the testimony that they could have provided. Consequently, there is no factual basis for concluding that counsel was ineffective for failing to call witnesses or present evidence of text messages. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.").

Bassett's impeachment claim fails for the same reasons. The record shows that a police officer's "PCR" was mentioned at trial, but it was not introduced into evidence and is not part of the lower court record. See *Seals*, 285 Mich App at 20-21; *Powell*, 235 Mich App at 561 n 4. But, even if we consider the police report appended to Bassett's Standard 4 brief, it indicates that Carter reported portions of a conversation between himself and "Baby Cuz" (Barrett), but did not mention that "Mooney" (Bassett) participated in the conversation. However, the report was

prepared by someone other than Carter. Accordingly, it is impossible to know whether the omission occurred because Carter failed to mention Mooney's statements or because, even though he mentioned them, the officer did not include that information in the report. In any event, the record plainly shows that defense counsel extensively cross-examined Carter and used the PCR to impeach his testimony. Given defense counsel's impeachment of Carter through other means, the fact that he did not use the report to impeach every inconsistent statement made by Carter at trial did not render defense counsel ineffective. See *Lane*, 308 Mich App at 68; *McFadden*, 159 Mich App at 800.

## IV. CONCLUSION

Defendants have failed to demonstrate that they are entitled to relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto