*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

SEAN MARTIN,

Defendant-Appellant.

UNPUBLISHED
March 18, 2021

No. 350817
Wayne Circuit Court
LC No. 19-003410-01-FH

Before: SWARTZLE, P.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his bench trial convictions of unlawful imprisonment, MCL 750.349b, assault with a dangerous weapon (felonious assault), MCL 750.82, intent to commit arson (preparation to burn a dwelling), MCL 750.79(1)(d)(*vi*), and domestic violence, MCL 750.81(2). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 12 to 20 years' imprisonment for the unlawful imprisonment conviction, 5 to 15 years' imprisonment for the felonious assault conviction, 12 to 20 years' imprisonment for the preparation-to-burn conviction, and 137 days' incarceration for the domestic violence conviction. On appeal, defendant solely contends that the evidence was insufficient to support the preparation-to-burn conviction. We disagree. Accordingly, we affirm.

Police officers were dispatched to the home of Rose Fox after receiving reports of "a cutting." Officers found Fox in the street outside her home with a gash on her face and blood splattered on her clothing. Defendant was inside Fox's residence with her children. The police ordered defendant, who had been living with Fox and her children, to vacate the home. Defendant refused and instead squirted lighter fluid on the front door of the residence. A police officer testified that defendant "poured [lighter fluid] on the front door, and [then] left a trail leading to the upstairs." Officers entered the home where they found defendant in an upstairs bedroom holding Fox's two young sons, EF and NF, at knifepoint.

The police negotiated with defendant in an effort to free the children, and defendant eventually did allow EF to leave. NF, however, remained with defendant. During the negotiation period, defendant repeatedly asked officers for a lighter or a lit cigarette. Believing that defendant

-1-

might use a lighter or lit cigarette to start a fire, the police refused to supply him with either ignition mechanism. When officers voiced their refusal, defendant stated, "I got gas up here, too. I'm gonna torch this bitch."[1] Defendant had also poured an unknown liquid on the carpet of the upstairs hallway, which the officers believed was a fire accelerant. Defendant testified on his own behalf, and he asserted that he did not intend to burn the home—it was merely a scare tactic. At one point, defendant did tell the officers, "I ain't gonna do that," referring to setting a fire. Defendant did not have in his possession anything with which to ignite the flammable liquid. The police were subsequently able to subdue defendant, and he was arrested. Defendant was convicted and sentenced as indicated earlier. This appeal ensued.

On appeal, defendant argues that the evidence was insufficient to sustain the preparation-to-burn conviction because the evidence failed to show that he had the requisite intent considering that he lacked the ability or tools to ignite or start a fire, e.g., a lighter, matches, or lit cigarette, despite pouring flammable liquids in the dwelling.

In *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), this Court addressed a claim of insufficient evidence in the context of a bench trial, stating as follows:

> We review claims of insufficient evidence de novo. When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [Citations omitted.[2]]

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Id.* at 622. "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (citation omitted).

"A person who uses, arranges, places, devises, or distributes an inflammable, combustible, or explosive material, liquid, or substance or any device in or near a building, structure, other real property, or personal property *with the intent to commit arson* in any degree . . . is guilty of a crime

---

[1] This statement by defendant was picked up by the audio of an officer's body camera. A DVD of the officer's body camera footage was admitted into evidence.

[2] This standard derives from *Jackson v Virginia,* 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979). Our Supreme Court has also expressly held that the *Jackson* standard applies to bench trials. *People v Petrella*, 424 Mich 221, 269-270; 380 NW2d 11 (1985).

. . . ." MCL 750.79(1) (emphasis added). The trial court, sitting as factfinder, concluded that defendant had the requisite intent on the bases that he expressly threatened to torch the home and that he had asked the police for a lighter, matches, and a lit cigarette. The trial court opined that if defendant had found "the means to burn the house to the ground, he would have done that[.]" Although the court indicated that it believed that defendant threatened to burn the dwelling as a scare tactic, it also determined that he did in fact have the intent to burn the home and that defendant did not do so only because he did not have access to anything to ignite the flammable liquid.

In light of defendant's threat that he was going to "torch" the home and the evidence that defendant specifically asked the police for an item that could be used to ignite the flammable liquid that he poured around the home, there was more than sufficient evidence to support the preparation-to-burn conviction. The "torch" statement constituted direct evidence of an intent to commit arson, and the evidence regarding defendant's requests for a lighter and a lit cigarette constituted circumstantial evidence of an intent to burn the home. The fact that defendant did not have the immediate or present means to start a fire did not negate his willingness and intention to commit arson. Although there was also evidence that defendant did not intend to burn the dwelling, credibility issues were for the trial court to assess as the trier of fact and all conflicts in the evidence must be resolved in favor of the prosecution. *Kanaan*, 278 Mich App at 618-619.

Defendant contends that his conviction must be reversed under our Supreme Court's decision in *People v Reeves*, 458 Mich 236; 580 NW2d 433 (1998). We conclude that defendant's reliance on *Reeves* is entirely misplaced. The *Reeves* Court stated and ruled:

> We are asked to consider whether evidence of a victim's reasonable apprehension of an immediate battery satisfies the assault element of assault with intent to rob while unarmed (AWIR-U). The Court of Appeals reversed defendant's conviction of that offense on the basis that there was no proof that defendant possessed the actual ability to carry out the threatened battery. We conclude that an assailant's undisclosed inability to do harm to an intended victim does not preclude a conviction of an AWIR-U offense, as long as the victim's apprehension of imminent injury was reasonable. We reverse the decision of the Court of Appeals and remand this case to the trial court for reinstatement of defendant's conviction. [*Id.* at 237.]

Here, defendant argues that "[u]nlike *Reeves*, an attempt to commit arson does not involve the reasonableness of whether the officers believed that an actual arson would occur. In fact, the opposite is true." Defendant is contending, apparently, that because this case is unlike or the opposite of *Reeves*, the absence of an actual ability to burn the home precluded conviction as intent could not be established. We can make no sense of this argument. *Reeves* has absolutely no application to or bearing on resolution of this appeal. *Reeves* did not speak to the issue regarding whether a defendant's inability to actually perform an act precludes a determination that the defendant intended to perform the act. Rather, *Reeves* merely indicated that a defendant's inability to perform an act does not preclude, in the context of the assault element of assault with intent to rob, a determination that the victim was under a reasonable apprehension of imminent injury under the surrounding circumstances, which is a matter that does not concern the defendant's intent. The fact that the preparation-to-burn charge does not include a reasonable-apprehension element from

a victim's viewpoint does not logically mean that an inability to start a fire precludes a finding of an intent to start a fire. A person can have the intent to commit a criminal act before obtaining the ability to carry out the act. And in this case, we think it clear that defendant could have had the intent—and, more to the point, that there was sufficient evidence from which the factfinder could conclude that he did have the intent—to burn the home, even though he may not have had the present ability to set the dwelling on fire.

Defendant also points to our Supreme Court's holding in *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993), in which the Court stated:

> An attempt consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation. Mere preparation is distinguished from an attempt in that the former consists of making arrangements or taking steps necessary for the commission of a crime, while the attempt itself consists of some direct movement toward commission of the crime that would lead immediately to the completion of the crime. [Quotation marks and citations omitted.]

Once again, defendant relies on a case that has no pertinence to the instant appeal. We are not addressing a case involving a charge of an attempted offense. *Jones* stands for the unremarkable proposition that to be guilty of an attempted crime, a defendant must have the intent to commit a particular offense and must take a step toward commission of the crime beyond mere preparation. The *Jones* Court did *not* indicate that taking a step toward the commission of a crime beyond mere preparation is required to establish the "intent" element; rather, it is required to prove the "attempt" element. We have no "attempt" element in this case. The crime of preparation-to-burn requires an affirmative physical act involving, for example, the placement of a flammable or inflammable liquid in a structure, accompanied by an intent to burn, which does not require proof of some additional act or of an ability to act, only some evidence of intent. And in this case there was proof of an intent to burn by the words spoken by defendant himself, including his requests to police for an item that could be used to start a fire and his threat to set the home on fire.

We affirm.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Jonathan Tukel