# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HILARY MARTINE ULP,

Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 335911
Macomb Circuit Court
LC No. 2015-003612-FC

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of first-degree child abuse, MCL 750.136b(2). We affirm.

This case arises from injuries sustained by a 14-month old child, NK, in May 2015. At the time, defendant was in a dating relationship with NK's father. On May 14, 2015, defendant babysat NK from 7:30 p.m. to 10:30 p.m. at the father's house while the father was away playing cards. The father returned at 10:30 p.m., and defendant spent the night at the father's home. The next morning, the father awoke to cries from NK. When the father picked NK up out of his crib, NK's body was stiff and his head fell backwards. Defendant called 911, and NK was transported to the emergency room. NK's injuries included fractured ribs, a fractured pelvis and collarbone, subdural hematoma (brain bleeding), petechiae (burst blood vessels), and retinal hemorrhaging (bleeding in the back of the eyes).

## I. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that the evidence was insufficient to convict her of first-degree child abuse because the evidence suggested that NK's father, not defendant, abused NK. To support her argument, defendant points to evidence that NK was in the sole care of the father from 2:30 a.m. to 9:00 a.m., the father was alone with NK at 9:00 a.m. when NK started crying inconsolably, and NK did not have petechiae on his face until emergency medical services (EMS) arrived.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed in a light most favorable to the prosecutor to determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Robinson*, 475

-1-

Mich 1, 5; 715 NW2d 44 (2006). It is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

Defendant does not argue that the evidence was insufficient to support any element of her conviction of first-degree child abuse. Rather, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that *she*, and not NK's father, abused the child.

Identity is an element of every crime, and like all elements, the prosecution must prove the perpetrator's identity beyond a reasonable doubt. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Direct testimony, circumstantial evidence, and the reasonable inferences arising from circumstantial evidence may provide satisfactory proof of the elements of an offense. *People v Johnson*, 146 Mich App 429, 434; 381 NW2d 740 (1985). This includes the identity of the perpetrator. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).

The evidence presented at trial was sufficient for a reasonable jury to conclude that defendant committed first-degree child abuse in violation of MCL 750.136b(2). The evidence established that NK was in defendant's sole care from 7:30 p.m. to 10:30 p.m. on May 14, 2015. No one else was present with NK during that time. After NK's father returned, only defendant, NK's father, and NK were home from 10:30 p.m. until 9:00 a.m. the next day. When defendant was interviewed by the police, she gave several explanations as to how NK may have gotten hurt while he was in her care. Defendant said that NK fell over while sitting on the floor and hit his head, she tossed him up in the air and caught him, she hugged him tightly, and he fell off the changing table and possibly hit the shelves, rocking chair, or toys on the floor. Although defendant denied hurting NK, Detective Matthew Hambright specifically asked defendant if she was present when NK was injured, and defendant said yes.

NK's injuries included fractured ribs, a fractured pelvis and collarbone, brain damage, petechiae, and retinal hemorrhages. There were possible signs of NK's injuries before 9:00 a.m. the day after defendant watched NK and he began crying inconsolably. Defendant told the detectives that, at some point, she went to check on NK and his lips were tight and he would not take a bottle. When the father arrived home at 10:30 p.m., NK had rough, labored breathing. Dr. Marcus DeGraw, the prosecution's expert witness, testified that both muscle tightness and labored breathing were consistent and indicative of NK's injuries. Although Dr. DeGraw testified that NK would have been in a lot of pain at the time the injuries were inflicted, he also said that the pain would be less if NK's body was not manipulated. The father testified that he did not move NK's body at 10:30 p.m. when he applied baby Vick's to help NK's rough breathing, or at 2:00 a.m. when he looked at NK in his crib to make sure his chest was rising and falling.

The direct testimony, circumstantial evidence, and the reasonable inferences arising from that evidence provide satisfactory proof that defendant was the perpetrator of this crime. She was alone with NK from 7:30 p.m. to 10:30 p.m., and gave several accounts of possible ways that NK may have sustained his injuries. Based on this evidence, a reasonable jury could have concluded beyond a reasonable doubt that defendant was the perpetrator of NK's abuse. Because defendant does not challenge whether the elements of first-degree child abuse were met, the evidence was sufficient to support defendant's conviction.

Defendant makes several arguments on appeal that the father, rather than defendant, caused NK's injuries. When reviewing whether evidence was sufficient to support a defendant's conviction, we do not require that the prosecution disprove every reasonable theory consistent with innocence, *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and instead only review "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt," *People v Hampton*, 407 Mich 354, 356; 285 NW2d 284 (1979). When reviewing the evidence, conflicts in fact are to be viewed in a light most favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).

Defendant's arguments—that NK's father was the abuser because (1) he had sole care of NK from 2:30 a.m. to 9:00 a.m., (2) he was alone with NK at 9:00 a.m. when NK started crying inconsolably, and (3) there was no testimony that NK had petechiae before 9:00 a.m.—all lend support to her theory that NK's father abused NK. But this evidence was presented to the jury and argued by defendant's trial counsel, and the jury rejected the argument that NK's father was the perpetrator of the abuse. While defendant's arguments support her theory of innocence, her arguments do not contradict that she had sufficient opportunity alone with NK to perpetrate the abuse and that NK suffered symptoms—namely rough, labored breathing and muscle tightness—before 9:00 a.m. that were consistent and indicative of NK's injuries. In other words, a reasonable jury could still find beyond a reasonable doubt that defendant abused NK in the face of defendant's contradictory evidence. See *Nowack*, 462 Mich at 400 ("[T]he prosecution is bound to prove the elements of the crime beyond a reasonable doubt. It is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide.") (Quotation marks and citation omitted.)

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that she was denied effective assistance of counsel because her trial counsel failed to (1) consult or call a medical expert, (2) impeach the prosecution's expert for misrepresenting facts, (3) have defendant undergo a psychological evaluation, and (4) object to the emergency room physician's testimony. We disagree.

After defendant filed her claim of appeal, this Court remanded for a *Ginther*[1] hearing and a decision as to whether defendant was denied effective assistance of counsel.[2] An evidentiary hearing was held, and the trial court entered an order concluding that defendant could not establish that she was denied effective assistance of counsel at trial.

Claims of ineffective assistance are mixed questions of law and fact. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011)

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Ulp*, unpublished order of the Court of Appeals, entered June 18, 2018 (Docket No. 335911).

(quotation marks and citation omitted). Appellate courts review the trial court's findings of fact for clear error, and review questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289.

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the burden of proving otherwise, *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance cannot be judged with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Trial counsel has wide discretion regarding trial strategy "because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). A court cannot substitute its judgment for that of trial counsel concerning matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). There is a strong presumption that trial counsel's performance was strategic, *Unger*, 278 Mich App at 242, and defendant bears the burden of overcoming this presumption, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The fact that a trial strategy fails does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). But the strategy must, in fact, be sound; a court must not insulate the review of counsel's performance by calling it trial strategy. *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014).

## A. FAILURE TO CONSULT WITH OR CALL A MEDICAL EXPERT

First, defendant argues that she was denied effective assistance because trial counsel failed to consult with a medical expert to review the medical records. Defendant asserts that a medical expert was particularly important in this matter because the prosecution's theory of the cause of NK's injuries is a highly contested and untested hypothesis. Yet defendant failed to offer any proof that trial counsel did not consult with an expert or properly investigate the medical issues. More to the point, at the *Ginther* hearing, defendant's trial counsel testified that he consulted with Dr. Steven Guertin on this case. Trial counsel turned over all of NK's medical records that were in counsel's possession to Dr. Guertin, and after reviewing the records, Dr. Guertin concluded that NK's injuries were the result of child abuse. Trial counsel consulted with Dr. Guertin on four or five occasions before trial, but did not call Dr. Guertin as a matter of trial strategy because (1) counsel believed that he could get the same information from Dr. DeGraw on cross-examination and (2) Dr. Guertin opined that the prosecution's cross-examination of him could be detrimental to defendant. Defendant's argument that trial counsel was ineffective for failing to consult a medical expert is therefore factually inaccurate. As for defendant's argument that trial counsel was ineffective for failing to call an expert to testify, we note that decisions regarding whether to call a witness are generally a matter of trial strategy, *Horn*, 279 Mich App at 39, and trial counsel explained his strategic reason for not calling the expert he consulted. Defendant's arguments fail to overcome the strong presumption that this decision was reasonable trial strategy.

-4-

Defendant alternatively contends that trial counsel was ineffective for failing to consult and call a *different* medical expert who could have provided more favorable testimony. Defendant analogizes this case to *Ackley*, 497 Mich at 389-390, in which our Supreme Court found that trial counsel was objectively unreasonable when it consulted only a single expert after that expert told counsel that he "disagreed with the defense's theory" of the case and advised counsel to consult a different expert who "was significantly more likely to agree with" the defense's theory.

We agree with the trial court that this case is distinguishable from *Ackley* because Dr. Guertin did not advise trial counsel that he disagreed with the defense's theory of the case or that trial counsel should consult a different expert. As noted by our Supreme Court in *Ackley*, an attorney's selection of an expert witness may be a "paradigmatic example of trial strategy," so long as it is made after a thorough investigation of the law and facts. *Id*. at 390-391 (quotation marks and citation omitted). Here, there is nothing to suggest that defendant's trial counsel's decision to not consult a different expert was objectively unreasonable; Dr. Guertin advised counsel that NK's injuries were indicative of abuse and did not recommend that trial counsel consult another expert. Based on trial counsel' consultation with Dr. Guertin, it was objectively reasonable for trial counsel to proceed on an alternative-perpetrator defense, especially in light of the circumstantial evidence that NK's father could have abused NK. Though this strategy was unsuccessful, it was still objectively reasonable. *Petri*, 279 Mich App at 412.

## B. FAILURE TO IMPEACH THE PROSECUTION'S MEDICAL EXPERT

Defendant argues at length that trial counsel was ineffective for failing to impeach the testimony of the prosecution's expert witness for inconsistencies in or misrepresentations of NK's medical records. When defendant filed her post-conviction motions for appointment of an expert and supplemental discovery, Dr. Douglas Smith, defendant's proposed expert in pathology, had reviewed NK's medical records and the trial transcript. Defendant's motions, as well as her arguments on appeal, are based on Dr. Smith's "rebuttals" of the evidence presented at trial by Dr. DeGraw. Dr. Smith recommended that other specialized physicians review NK's records to determine whether defendant was prejudiced by trial counsel's alleged failure to thoroughly review the medical evidence. Based on the inconsistencies that Dr. Smith discovered, defendant alleges that her trial counsel was ineffective for failing to impeach Dr. DeGraw on the inconsistencies between his testimony and the medical records.

Defendant's entire argument on this claim is premised on her belief that she could have proceeded with a different defense at trial: rather than arguing that defendant was not NK's abuser, trial counsel could have argued that NK was not abused at all. Trial counsel's failure to call a witness or present evidence only constitutes ineffective assistance if it deprives the defendant of a "substantial defense" *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). A defense is substantial if it might have made a difference in the outcome at trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

The inconsistencies or errors found by Dr. Smith are not significant enough to demonstrate that the outcome at trial would have been different had trial counsel further investigated the medical evidence, called an expert witness to rebut Dr. DeGraw, or impeached Dr. DeGraw. To begin, defendant takes issue with Dr. DeGraw's testimony that a CAT scan "showed" a subdural hematoma, which Dr. DeGraw explained was a pocket of blood between

the brain and the skull. Defendant's expert, Dr. Smith, noted that the CAT scan had to be done twice, and that the CAT scan report stated that "there is evidence that is *very suggestive* of a subdermal hematoma." (Emphasis added). While the jury may have agreed with defendant's argument that there is a distinction between NK's CAT scan "showing" a subdural hematoma and being "very suggestive of" one, that distinction does not support that NK was not abused. And even had trial counsel impeached Dr. DeGraw on his use of the word "showed" instead of stating that the CAT scan was "very suggestive," there is no reasonable expectation that it would have affected the outcome of the proceedings; either word choice means that the CAT scan evidenced that NK had a subdermal hematoma.

Defendant next argues that trial counsel should have taken issue with Dr. DeGraw's testimony that he did not personally observe retinal hemorrhaging in NK, and relied upon the report of an ophthalmologist. Dr. Smith asserted that NK's retinal hemorrhages could have been caused by the two neurosurgeries that were performed after NK was admitted. Defendant contends that trial counsel should have relied on this fact to bring into question whether the retinal hemorrhaging was due to trauma before NK was admitted to the ER. Yet this would have been futile because Dr. Sills testified that when NK arrived in the ER, he used an ophthalmoscope to look into NK's eyes and saw bleeding in the back of the eyes. Defense counsel was not ineffective for failing to impeach Dr. DeGraw's testimony about NK's retinal hemorrhages because the same evidence would have been presented later through Dr. Sills's testimony.[3]

Defendant also argues that trial counsel should have impeached Dr. DeGraw when he testified that petechiae are only caused by a low platelet count or compressive force. Dr. Smith disputed this conclusion and asserted that petechiae can be caused by seizures, which NK likely had before coming to the ER. We acknowledge these alleged discrepancies, but note that the petechiae were only one of NK's "constellation of injuries." According to Dr. DeGraw, when these injuries were viewed in conjunction, they were highly indicative of trauma and abuse. On this basis, we conclude that defense counsel was not ineffective for failing to impeach Dr. DeGraw on petechiae's causes because it would not have changed the outcome at trial.

As for NK's fractures, defendant asserts that trial counsel should have consulted with a radiologist because the CAT scans and X-rays did not conclusively determine that NK had some of the fractures mentioned by Dr. DeGraw. Dr. Smith did not have access to the X-rays and

---

[3] Defendant attempts to downplay Dr. Sills's observations by arguing that Dr. Sills did not provide detail about the hemorrhaging, which defendant contends is an issue because there are different types of retinal hemorrhaging and "[a]ppropriately categorizing the retinal hemorrhage is a tantamount step in the diagnosis of the patient's condition." Although defendant names several different types of retinal hemorrhages, she does not explain why "categorizing the retinal hemorrhage is a tantamount step in the diagnosis of the patient's condition," or even what type of retinal hemorrhaging is indicative of abuse and which, if any, is not. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation to support authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

CAT scans, so he based his opinions on the medical records of those tests. Dr. Smith opined that later X-ray reports of NK's fractures did not discuss healing of the fractures, which Dr. Smith believed would have been discussed if the injuries were, in fact, fractures. Dr. Smith also pointed out that NK's medical records indicated that the fractures to NK's right anterior iliac wing and ribs were "poorly visualized," and questioned whether a fracture to the right anterior iliac wing would even be indicative of abuse. Lastly, Dr. Smith opined that NK's fractured clavicle may have been an old injury or a bone malformation because NK's medical records described the fracture as having rounded edges, which Dr. Smith explained could be suggestive of a prior injury. We recognize that Dr. Smith's review of NK's fractures was significantly handicapped by his lack of access to NK's CAT scans and X-rays and his being forced to base his review off NK's medical records. Yet nothing in those records, as explained by Dr. Smith, suggests that NK did not actually suffer from the injuries described by Dr. DeGraw. At most, Dr. Smith's analysis proposes that trial counsel could have asked more questions about NK's fractures. This in turn does not suggest that NK's fractures were not present; for instance, defendant does not explain why a "poorly visualized" fracture is in anyway indicative of the fracture not existing. Nothing about Dr. Smith's analysis of NK's medical records supports that NK did not suffer from the injuries described by Dr. DeGraw at trial. Dr. DeGraw testified that NK's injuries were indicative of inflicted or abusive trauma. Even if trial counsel impeached Dr. DeGraw on the points raised by defendant on appeal, it would not have tended to contradict Dr. DeGraw's testimony that NK suffered from injuries and that those injuries were indicative of abuse. Thus, trial counsel's impeachment would not have made a difference in the outcome at trial, and trial counsel's failure to impeach Dr. DeGraw on NK's fractures did not amount to ineffective assistance. *Chapo*, 283 Mich App at 371.[4]

Overall, defendant did not dispute that NK was severely injured. Dr. DeGraw and Dr. Sills concluded that NK's injuries, taken as a whole, were not an accident; his injuries were probative of child abuse. Dr. DeGraw testified that defendant's explanations for how NK may have been injured did not correlate to the severity of his injuries. NK's injuries were not at issue for the jury, but rather, at issue was the identity of the perpetrator. Thus, defendant has failed to demonstrate that trial counsel was ineffective for failing to impeach Dr. DeGraw or consulting with other specialized physicians.

Lastly, defendant briefly contends that trial counsel was ineffective for failing to obtain additional records for experts to review. Defendant argues that additional records could have provided a fuller picture of the causes of NK's injuries and that she was precluded from obtaining the records to review for this appeal because trial counsel failed to originally obtain

---

[4] Defendant also briefly contends that trial counsel was ineffective for failing to question Dr. DeGraw at trial about the fact that drainage from NK's nasogastric tube was noted as "coffee grounds." Dr. Smith believed that this fact raised the possibility that NK "was slowly bleeding from somewhere." Yet defendant does not explain the significance of this fact or how it would have tended to impeach Dr. DeGraw or otherwise provide favorable evidence to defendant. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation to support authority." *Kelly*, 231 Mich App at 640-641.

them. At the *Ginther* hearing, trial counsel testified that he gave all of the medical records that he had to Dr. Guertin. Trial counsel believed that Dr. Guertin would request additional records if he needed them, and stated that Dr. Guertin did not require any additional records because he was able to render his expert opinion based on the records provided. Based on trial counsel's consultation with Dr. Guertin, we believe that it was objectively reasonable for trial counsel to not request additional records, and therefore defendant is not entitled to a new trial on this ground.

## C. FAILURE TO CONSULT A FORENSIC PSYCHOLOGIST

Defendant alleges that trial counsel was ineffective for failing to have a forensic psychologist review the recorded interrogations of defendant. In support of defendant's postjudgment motion for expert assistance, defendant's appellate counsel had Dr. Jeffrey Wendt, a forensic psychologist, review the interrogations. Dr. Wendt concluded that defendant's "statements and demeanor during the interview provided indications that there were likely psychological factors and situational factors that rendered her significantly more vulnerable to interpersonal influence than the average adult." Dr. Wendt opined that a psychological evaluation of defendant would have been beneficial to the trier of fact to understand how defendant's statements and behavior were influenced during the interrogations. On appeal, defendant argues that the testifying detectives "cherry-picked" defendant's statements from the interrogations and took them out of context to suggest that defendant made admissions against interest.

Defendant does not allege that the statements she made during her interviews with the detectives were involuntary. Rather, she argues that her trial counsel was ineffective because he did not have a forensic psychologist review the interrogation videos or have defendant undergo a psychological evaluation, which may have supported the conclusion that she was influenced into admitting that she injured NK.[5] At the *Ginther* hearing, defendant's trial counsel explained that he did not consult a forensic psychologist because defendant never confessed. This is supported by the record and the video of defendant's interrogations: defendant never confessed to injuring NK. She gave several inconsistent explanations for how NK may have sustained his injuries while in defendant's care, but she repeatedly denied ever intentionally hurting NK. Even when the detectives employed interview techniques like falsely telling defendant that they had evidence directly linking her to NK's injuries, defendant continued to deny any abuse. Based on trial counsel's explanation, we do not believe that it was objectively unreasonable for counsel to not consult a forensic psychologist to explain defendant's behavior. We would also note that, at best, a forensic psychologist could have explained that defendant was susceptible to influence, which may explain why she made some statements that, as she words it on appeal, "sounded like circumstantial evidence of guilt." Yet in so doing, trial counsel and the forensic psychologist would have to highlight for the jury those statements that "sounded like circumstantial evidence

---

[5] The interrogation videos were not played at trial or admitted as exhibits. Rather, they were filed with this Court by defendant as exhibits to her brief on appeal and motion to remand. The videos were not a part of the lower court record, but they were reviewed and determined to be fairly and accurately described by the testifying detectives at trial.

of guilt." We find that it was sound trial strategy for trial counsel to not highlight for the jury that defendant made statements that could be interpreted as incriminating, and to instead focus on the fact that defendant continually denied ever abusing NK. See *Vaughn*, 491 Mich at 670 (stating that courts reviewing an ineffective assistance claim must affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did).[6]

### D. FAILURE TO IMPEACH EMERGENCY ROOM PHYSICIAN

Defendant argues that trial counsel was ineffective because he did not object to Dr. Sills's testimony, which allegedly misinterpreted a CAT scan and referred to "studies" even though Dr. Sills was not endorsed as an expert.

On the witness stand, Dr. Sills looked at a CAT scan report to refresh his memory, and then testified that NK had a subdural hemorrhage. Defendant asserts that trial counsel should have objected because the medical records were only "very suggestive" of a subdural hematoma. By the time Dr. Sills testified, the jury had already heard Dr. DeGraw's testimony that NK had a severe brain injury indicative of nonaccidental trauma, including a CAT scan that "showed" a subdural hemorrhage. For the same reasons that trial counsel was not ineffective for not objecting to Dr. DeGraw's testimony, trial counsel's lack of objection to Dr. Sills's testimony does not amount to ineffective assistance.

About the cause of NK's petechiae, Dr. Sills testified:

> What we found in studies is probably what we call shaking impact[], it's a combination of not only, it can be just rapid acceleration/deceleration many times. It can be acceleration/deceleration to an actual object like an, even a pillow. Just to stop it suddenly, a shaking impact from someone hitting something in the back. You won't see any bruise or swelling back there. It is all in the brain. They have very fragile blood vessels in the brain at this age.

Defendant argues that trial counsel was ineffective for not objecting to Dr. Sills's opinion that NK's brain injuries were caused by shaking because Dr. Sills was not endorsed as an expert, and for failing to ask which studies Dr. Sills relied on to render his opinion. Assuming that trial counsel could have successfully objected to Dr. Sills's testimony as to the cause of NK's petechiae and his reliance on unidentified studies, the objection would not have changed the outcome of trial. Before Dr. Sills testified, Dr. DeGraw explained what petechiae are and how

---

[6] In her second motion to remand for an evidentiary hearing, defendant argued that trial counsel was ineffective for failing to play the interrogation video for the jury. Defendant chose not to raise this claim in either of her briefs before or after this Court's remand. Although this issue is not properly before this Court, we nonetheless note our agreement with the trial court that trial counsel was not ineffective for not playing defendant's interrogation video to the jury. Trial counsel testified at the *Ginther* hearing that he believed that it was not in defendant's best interests to play the video for the jury because defendant did not present well. We see nothing objectively unreasonable about this strategy.

-9-

they are caused. He explained that petechiae can be caused by sustained compressive force, and that compressive force was consistent with NK's other injuries, such as his broken ribs. Even ignoring Dr. Sills's testimony, the evidence presented at trial was still that NK's injuries were indicative of abuse. Because it would not have changed the outcome of trial, trial counsel's failure to object to Dr. Sills's testimony does not amount to ineffective assistance.[7]

## III. POSTJUDGMENT MOTIONS

In her final argument, defendant contends that the trial court abused its discretion by denying her postjudgment motion for expert assistance and supplemental discovery. We disagree. This Court reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert at public expense for an abuse of discretion. *People v Bergman*, 312 Mich App 471, 488; 879 NW2d 278 (2015). This Court also reviews a trial court decision related to a discovery request for an abuse of discretion. *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998). A court abuses its discretion when its chosen outcome falls outside the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

Defendant filed her claim of appeal on November 28, 2016. Defendant filed her motions for expert assistance and supplemental discovery on August 1, 2017, arguing that expert review of several additional documents was necessary to assist defendant on appeal. The prosecution responded that defendant was not entitled to discovery or an expert at public expense as defendant already proceeded to trial. The trial court issued an opinion and order denying defendant's motions.

Defendant filed additional motions for expert funding and supplemental discovery in the trial court after the case was remanded. The trial court held a hearing on these motions, and issued an opinion and order denying defendant relief. Although the trial court determined that the motions were, arguably, inside the scope of the remand, it nonetheless denied defendant's motions for the same reasons that it previously denied the motions. The trial court relied on MCR 7.208(B)(1), which provides:

---

[7] In her second motion to remand for an evidentiary hearing, defendant argued that trial counsel was ineffective for failing to allow defendant or her mother to testify at trial. Defendant chose not to raise this claim in either of her briefs before or after this Court's remand. Although the issue is not properly before this Court, we note our agreement with the trial court that trial counsel was not ineffective for not calling defendant or her mother. Trial counsel testified that it was defendant's choice not to testify, and he considered calling defendant's mother as a witness but ultimately determined that it was not beneficial. There is nothing to suggest that trial counsel deprived defendant of her right to testify, especially because defendant, on the record, waived her right to testify at trial. As for the decision to not call defendant's mother as a witness, decisions on which witnesses to call are a matter of trial strategy, *Horn*, 279 Mich App at 39, and this Court does not substitute its judgment for that of trial counsel on matters of strategy, *Payne*, 285 Mich App at 190.

No later than 56 days after the commencement of the time for filing the defendant-appellant's brief as provided by MCR 7.212(A)(1)(a)([*iii*]), the defendant may file in the trial court a motion for a new trial, for judgment of acquittal, to withdraw a plea, or to correct an invalid sentence.

Defendant did not file a motion for a new trial, judgment of acquittal, to withdraw a plea, or to correct an invalid sentence in the trial court. MCR 7.208(B)(1). Rather, she filed postjudgment motions seeking an expert and discovery to aid in her appeal. Defendant provided no authority that would allow a trial court to decide these types of postjudgment motions, and the trial court noted that the cases cited by defendant did not support her position. The trial court therefore denied defendant's motion because she did not move for any relief allowable in a postjudgment motion.

On appeal, defendant continues to not cite any authority to support her position, but instead argues that the trial court's reliance on MCR 7.208(B)(1) was misplaced because defendant did not file any of the motions enumerated in that court rule. This is not enough. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). Because defendant failed to cite any caselaw, statute, or court rule allowing the trial court to provide defendant with the postjudgment relief that she requests, we conclude that the trial court did not abuse its discretion by ruling that it could not grant defendant her requested relief.[8]

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

---

[8] Based exclusively on policy arguments, defendant asks this Court "to opine that current case law for funding for experts [for indigent defendants] extends to appeal." We decline to do so in this case. Defendant's reason for requesting expert funding was to establish an ineffective assistance claim. Defendant's trial counsel already consulted an expert to assess NK's medical records, and that expert did not suggest that he needed additional medical records or recommend that trial counsel consult a different expert. As explained, in light of trial counsel's consultation with his expert, it was not objectively unreasonable for trial counsel to not consult a different expert or request additional medical records. Even if defendant were granted additional funding, it would, at best, allow defendant to find experts to testify on how trial counsel could have proceeded differently. But simply because trial counsel *could* have proceeded differently does not mean his performance was objectively unreasonable. After consulting with his expert, trial counsel proceeded with an alternative-perpetrator strategy. That strategy was entirely reasonable given the facts of this case.