*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 13, 2020

v

No. 345281
Grand Traverse Circuit Court
LC No. 18-012866-FH

HOWARD LEROY MCCANN,

Defendant-Appellant.

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of third-degree child abuse, MCL 750.136b(5), and domestic violence**,** third offense, MCL 750.81(5). The trial court sentenced defendant concurrently to two years' probation, with the first seven months to be served in jail, for each conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 30, 2017, defendant's 14-year-old daughter, PM, was disciplined at school for using her phone in class. Defendant picked PM up from school, and upon arriving home told PM to clean up their camper. According to PM, when they got home, defendant "got really mad and then I kind of was backing up into the corner of the camper between where my bed was and the shower area, and I was flinching, putting my hands up again. And, he told me if I flinched or backed away like that he would give me a reason to." PM testified at trial that defendant then "backhanded" her one time to her eye. PM stated that this left a bruise evidenced by two fingerprints (as opposed to a whole hand). PM recalled that she was between her bed and the shower at the time, and that the force of defendant's slap caused her to fall backward and hit her head on a metal bar. She testified that when she tried to get up, her vision was "a little blurry" and she "felt dizzy." PM testified that after defendant hit her, he "grabbed me by like the baby hairs on my neck and kind of led me inside" of Rose Pepsin's house, which was located on the same property as defendant's camper. PM stated that defendant spanked her three or four times while she was bent over a chair in Pepsin's living room, and that the spanking was "hard enough it hurt really bad" for around 20 minutes and caused it to be painful for her to sit down. PM also testified

that defendant had her raise her arms for 30 minutes to an hour after he spanked her, and told her that if she moved her arms, he would spank her again.

PM testified that she noticed the bruise on her eye one or two days after the incident. She also stated that the spanking "left a hand print for a while[.]" When the prosecution asked if defendant had hit her previously, PM testified that defendant had hit her within the past year while they were living in a different camper. She also testified that defendant had hit her one other time when she was "much younger." She stated that after the incidents in which defendant struck her, defendant "acted like they never happened" and that defendant "expected [her] to act like they never happened." The prosecution asked whether defendant was drinking alcohol "during any of these incidents, or around that time[.]" PM responded affirmatively regarding one of the incidents, but was never asked to clarify as to which incident. PM stated that she "always kind of thought [defendant] was more or less calmer when he was drinking and felt like [she] wasn't going to get in trouble for things when he was drinking."

Defendant testified and admitted to "slapping" PM with an open hand, but stated that he did it "for her welfare" and "to try to get her attention . . . [b]ecause she was physically out of control." Defendant stated that PM did not fall from the force of the slap. Defendant also admitted that he took PM to Pepsin's house to spank her, but denied pulling PM's hair on the way to the house. He acknowledged that he made PM bend over the chair and stay there for around 15 to 20 minutes so that she could "contemplate what was going to happen" before he spanked her with his hand three times. Defendant said that he did not look to see whether he left any marks, but he said that he knew he did not hit PM hard enough to cause any bruises. He also testified that he had PM stand in a corner and put her arms up, but said that it was probably only for "15 minutes, maybe, and [he] gave her a break."

Several individuals, including the CPS worker assigned to investigate the case, Pepsin, and defendant's sister, testified that after October 30 they noticed that PM had a black eye. The trial court also admitted a photograph taken by CPS of the bruise on PM's eye. When counsel showed defendant this picture, he stated that it looked like makeup and that PM often used makeup to create a fake black eye.

The jury convicted defendant as described. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel provided ineffective assistance by failing to object to the following portions of PM's testimony: (1) that defendant had previously slapped PM within the past year in a different camper and on another occasion when PM was younger; (2) that

defendant told her in the past to not "tell anybody"; (3) that defendant had a history of drinking alcohol; and (4) that defendant had called her names in the past.[1]  We disagree.

A claim of ineffective assistance of counsel presents a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  We review for clear error the trial court's findings of fact, and review de novo questions of constitutional law. *Id*.  Because no *Ginther*[2] hearing was held, our review is limited to the existing record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).  We review de novo issues of statutory interpretation.  See *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).  Counsel is not required to make futile objections. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Evidence of a person's character is generally inadmissible to prove that a defendant acted in accordance with that character on a particular occasion.  MRE 404(a).  However, evidence of other acts may be admissible under MRE 404(b) if (1) it is offered for a proper purpose, such as intent, identity, or absence of mistake or accident; (2) it is relevant under MRE 402; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994); MRE 404(b)(1).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.

In contrast to MRE 404(b), when a defendant is accused of domestic violence in a criminal case, prior acts of domestic violence are "admissible for *any* purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403."  MCL 768.27b(1) (emphasis added).  Both MRE 404(b) and MCL 768.27b require the prosecution to provide a defendant with notice prior to trial that it intends to introduce such evidence.

We conclude that even if defense counsel had raised an objection to PM's other-acts testimony, such an objection would have been futile.  PM's testimony was logically relevant and probative of defendant's intent. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).  Because defendant's intent or knowledge was an element of third-degree child abuse,

---

[1] Defendant does not provide a citation to what portion of PM's testimony he is referencing.  PM testified that defendant called her "the 'B' word," but this was after the incident on October 30, 2017.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

MCL 750.136b(5), proving that defendant intentionally or knowingly committed child abuse was a proper purpose under MRE 404(b). *VanderVliet*, 444 Mich at 79-81. And in any event, evidence of prior acts of domestic violence was properly admitted under MCL 768.27b(1).

Moreover, PM's testimony that defendant slapped her in the camper within the year prior to the incident was relevant to the third-degree child abuse charge in order to show that defendant intended to slap PM and that it was not an accident or mistake. See *People v Knox*, 469 Mich 502, 513; 674 NW2d 366 (2004) (explaining that evidence of prior physical abuse of a child is relevant to prove that a defendant's subsequent injuries were not an accident). Evidence that defendant told PM not to tell anyone after he hit her would be relevant for similar reasons.

PM's testimony was not substantially outweighed by the danger of unfair prejudice. "[A]ll evidence is somewhat prejudicial to a defendant—it must be so to be relevant." *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002). "Unfair prejudice" means that there is a tendency that the jury will give too much weight to evidence that has little probative value or that there is the tendency that the evidence will "adversely affect the opposing party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 607; 709 NW2d 595 (2005) (quotation marks and citation omitted).

Evidence that defendant previously struck PM was not "extraneous to the merits of the lawsuit" because, as previously mentioned, this evidence was highly probative for the jury to determine whether defendant committed the charged offenses. *Id*. Further, the potential for unfair prejudice was limited by the trial court's limiting instruction. In relevant part, the trial court stated:

> The prosecution has introduced evidence of claimed acts of domestic violence by the defendant for which he is not on trial. Before you may consider such alleged acts as evidence against the defendant you must first find the defendant actually committed those acts. If you find the defendant did commit these acts you may consider them in deciding the defendant committed the offenses for which he is now on trial. You must not convict the defendant here solely because you think he is guilty of other bad conduct.

Jurors are presumed to follow their instructions, *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Because evidence of other acts of domestic violence was relevant and not unduly prejudicial, any objection would have been futile. *Thomas*, 260 Mich App at 457.[3] Therefore,

---

[3] PM's testimony regarding defendant's drinking does seem, at best, marginally relevant, as it does not appear that any party asserted that defendant was intoxicated during the incident that led to the current charges. However, to the extent that PM's testimony regarding defendant's past alcohol use can be considered other-acts evidence, we note that defendant can show no prejudice from its admission. PM merely made an isolated statement that defendant had been drinking at the time of one of the previous incidents, and added that generally drinking made defendant calmer.

defendant cannot establish that had counsel objected to this other-acts evidence, there was "a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

Defendant nonetheless argues that the trial court may have declined to admit PM's testimony if defense counsel had objected on the ground that the prosecution had failed to provide notice under either MCL 768.27b(1) or MRE 404(b). We agree that the record contains no evidence that the prosecution provided such notice; this Court has stated that failure to give such notice is plain error. *People v Hawkins*, 245 Mich App 439, 453; 628 NW2d 105 (2001). However, such an error is harmless when the challenged evidence is admissible, the defendant has not described how he would have reacted differently if he had received pretrial notice, and in general the lack of notice "lacked the significant effect, either alone or in concert with other factors," to warrant reversal. *Hawkins*, 245 Mich App at 453. Such is the case here; defendant does not explain what different actions he would have taken had he received notice of the prosecution's intent to introduce this evidence, and the record reflects no reason to conclude that the lack of notice had a "significant effect" on the course of the proceedings. *Id*. Therefore, if the trial court had admitted the evidence over defense counsel's objection based on lack of notice, such an error would not have required reversal; further, defendant has not presented any evidence that the trial court would have responded to defense counsel's objection by striking PM's testimony. Defendant has not demonstrated that defense counsel's failure to raise the issue of lack of notice was outcome-determinative. *Trakhtenberg*, 493 Mich at 51.

III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed, in response to his assertion of the affirmative defense of parental discipline, to present sufficient evidence to prove beyond a reasonable doubt that the force used was not reasonable. We disagree. We review de novo a challenge to the sufficiency of the evidence to determine whether the trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Gains*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We view the evidence in the light most favorable to the prosecution and resolve any evidentiary conflicts in favor of the jury verdict. *Id*.

Under MCL 750.136b, a defendant is guilty of third-degree child abuse if he "knowingly or intentionally causes physical harm to a child" or "knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child." "Physical harm" is defined as "any injury to a child's physical condition." MCL 750.136b(1)(e). However, MCL 750.136b(9) specifically provides that "this section does not prohibit a parent or guardian, or other person permitted by law or authorized by the parent or guardian, from taking steps to reasonably discipline a child, including the use of reasonable force." Because defendant's defense was that the force he used on PM was reasonable

---

Defendant has not shown a reasonable probability that, but for this evidence, the outcome of the proceedings against him would have been different. *Trakhtenberg*, 493 Mich at 51.

parental discipline, the prosecution was required to prove that defendant's actions were not reasonable discipline. *People v Sherman-Huffman*, 466 Mich 39, 42; 642 NW2d 339 (2002).

The elements of domestic violence offense include (1) the commission of an assault or an assault and battery (2) against a resident or former resident of the same household. See MCL 750.81(4). An assault is "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234, 701 NW2d 136 (2005). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. at 234 (quotation marks and citation omitted).[4]

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to allow a rational jury to find beyond a reasonable doubt that defendant did not use reasonable force. PM testified that defendant "backhanded" her, which caused her to fall backward and hit her head on a metal bar; when she stood up, her vision was blurred and she felt dizzy. She testified that when defendant hit her, he left a bruise that resembled two of his fingerprints. She also testified that defendant spanked her three or four times and that after defendant spanked her, it "hurt really bad" for around 20 minutes, that it hurt to sit down, and that it "left a hand print for a while[.]" A jury could reasonably conclude from this evidence that the force defendant exerted in disciplining PM exceeded that which would be "reasonable," supporting the jury's determination that defendant was guilty of third-degree child abuse. See *Sherman-Huffman*, 466 Mich at 41 (finding that the defense of reasonable discipline was "plainly unsupportable" when the victim was spanked and struck in the face hard enough to leave visible bruising and cause a nosebleed).

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[4] Although the parental discipline defense has its roots in the child abuse statute, here the trial court instructed the jury that parental discipline was "a defense to both charges." Because we find that the evidence was sufficient to prove beyond a reasonable doubt that the force defendant used was not reasonable, we do not consider whether this defense has any applicability to a charge of domestic violence.