*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WARBLOW, Minors.

UNPUBLISHED
March 2, 2023

No. 360948
Jackson Circuit Court
Family Division
LC No. 22-001310-NA

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

### AFTER REMAND

Respondent father appealed as of right the trial court order terminating his parental rights to his two minor children, MW and HW, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j). He argued that the trial court erred in terminating his parental rights at initial disposition without first finding that aggravated circumstances existed to excuse the Department of Health and Human Services (DHHS) from providing reasonable efforts, and that termination was not in the children's best interests. In our previous opinion, we vacated the order terminating respondent's parental rights and remanded for the trial court to make a finding of aggravated circumstances or order reasonable efforts, and retained jurisdiction. *In re Warblow Minors*, unpublished per curiam opinion of the Court of Appeals, entered November 17, 2022 (Docket No. 360948); pp 1, 5. The remand has concluded in the trial court, and this matter returns to us on the merits.

### I. REASONABLE EFFORTS

Reasonable efforts to reunify the child and family must be made in all cases except when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances" as provided by MCL 722.638(1) and (2). MCL 712A.19a(2)(a). MCL 722.638(1) requires DHHS to file a petition for authorization by the court if:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

DHHS filed a petition for termination of parental rights at initial disposition, MCL 722.638(2), because of allegations of sexual abuse by ES, the daughter of respondent's wife. Respondent's parental rights were terminated, and he argued on appeal that the trial court erred by failing to find that aggravated circumstances or reasonable efforts to reunify the family had occurred, and moreover, aggravated circumstances did not exist. However, we concluded in our previous opinion that the trial court did not make a judicial determination that respondent subjected the children to aggravated circumstances, and we remanded this matter to the trial court to make that determination. *In re Warblow Minors*, unpub op at 4-5.

The trial court held a hearing, discussed the scope of the remand with the parties, and they each filed briefs on remand. The court held a second hearing, and announced its findings on the record, which were also included in a supplemental order of disposition entered on remand as follows:

> This Court now judicially determines that aggravating circumstance[s] exist in this instant case. The testimony of the half-sibling[] of the children at issue was that she was repeatedly sexually assaulted by Respondent. She is now 15 (and an exceptionally credible witness) and testified that from the time she was in the 4th through 5th grades Respondent, her step-father, would call her into his bedroom where he would be on the bed wearing boxers (underwear). She further testified that he asked her to rub his leg above the knee and then his "private part" would (later referenced as his penis) pop out of his boxers (underwear). She also stated that he would tell her to rub his private part, which she did, not knowing at that young age, it was not right.

> Things got worse with time. She testified the last time it happened, it was similar in nature, i.e., the step-father called her into his room, he told her to rub his leg and then his private part. However, this time he asked her to take her pants off which she refused. She also testified that he tried to bribe her with more television and asked her to take her pants off again which she again refused and got off the bed and walked out the door. *Certainly and simply the actions of the Respondent are at a minimum, attempts to penetrate.*

> She testified that this happened 10-15 times and each time she had to rub his erect penis. Although there are some inconsistencies in her testimony, this Court still gives credence to her testimony given her young age at the time of the sexual assaults and the number of years that have gone by since.

> She also testified that she told her mom, but that her mom told her she was dreaming it and not to bring it up again. Her testimony continued that she did not tell the police or [Child Protective Services (CPS)] because she was afraid she would get in trouble. Furthermore, she testified that she has had to block a lot out

-2-

of her head so "I don't feel it or have an emotional breakdown." She went on to say that she had been hospitalized four times—twice for suicidal attempts and twice for suicidal thoughts. She testified that she just wanted to get out of that life with her step-father and believed suicide was an escape. [Emphasis added.]

We review the trial court's findings of fact under the clearly erroneous standard. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). We accord deference to the special opportunity of the trial court to judge the credibility of the witnesses. *Id*. Under this standard, we cannot say that the trial court clearly erred in its determination that aggravated circumstances existed to excuse DHHS from providing respondent with reasonable efforts to reunify with the children.

In their supplemental briefs filed in this Court after remand, the parties dispute the meaning of "attempted penetration" in MCL 722.638(1)(a)(*ii*).[1] The term is not defined in the statute. Most of the circumstances listed as aggravating circumstances in MCL 722.638(1)(a) "are likely to be the subject of criminal prosecutions. They represent demonstrably violent or indisputably abusive conduct that causes long-lasting harm." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 4. The parties indicate that no criminal charges have been filed against respondent based on the allegations. "When a term is not defined in a statute, we may consult the dictionary definition of the term." *People v Rogers*, 338 Mich App 312, 322; 979 NW2d 747 (2021). "Penetration" is defined as "[t]he act of piercing or passing something into or through a body or object," and in the context of criminal law, as "[t]he entry of the penis or some other part of the body or a foreign object into the vagina or other bodily orifice." *Black's Law Dictionary* (11th ed).[2] "Attempt" is defined as "[t]he act or an instance of making an effort to accomplish something, esp. without success," and in the context of criminal law, as "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime." *Id*. The finder of fact may infer a person's intent from his words or actions; "[i]n other words, a defendant's intent can be proved by circumstantial evidence." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

With this in mind, we cannot say that the trial court clearly erred in determining that aggravated circumstances existed because respondent attempted to penetrate ES. His repeated actions of asking her to rub his penis and to take off her clothes constitute circumstantial evidence of his intent. He even tried to bribe a very young ES with television to convince her to take off her clothes. The fact that ES refused to remove her clothes and left the room, and that penetration did not occur, is irrelevant. "MCL 722.638(1)(a)(*ii*) mandates that petitioner seek termination of parental rights when the parents are suspected of perpetuating sexual abuse upon the minor children or their siblings and when a parent fails to intervene to eliminate that risk." *In re HRC*,

---

[1] Respondent argues that the trial court found that respondent assaulted ES with the intent to penetrate, which is not what the court found, and will not be discussed herein.

[2] The Michigan Penal Code, in defining terms that apply to criminal sexual conduct, defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

286 Mich App 444, 463; 781 NW2d 105 (2009).  Petitioner "is not required to provide reunification services when termination of parental rights is the agency's goal."  *Id*.  Thus, on remand, the trial court did not clearly err in its determination that aggravated circumstances existed to excuse DHHS from providing respondent with reasonable efforts toward reunification.

## II. BEST INTERESTS

Respondent initially argued on appeal that the trial court erred in determining that termination was in the children's best interests because it relied solely on the doctrine of anticipatory neglect and failed to consider any other factors.  Having initially concluded to remand the matter on reasonable efforts, we declined to address this issue.  *In re Warblow Minors*, unpub op at 5.  It is now ripe for adjudication.

Once a statutory ground for termination is established, the court must find that termination of parental rights is in the child's best interests in order to terminate.  MCL 712A.19b(5); *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence.  *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).  This Court reviews for clear error a trial court's determination that termination of parental rights is in a child's best interests.  *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).  "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made."  *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

A trial court must weigh all of the evidence in making a best-interests determination.  *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).  This encompasses many factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," as well as "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption."  *Id*. at 713-714 (quotation marks and citations omitted).  "[T]he focus at the best-interest stage has always been on the child, not the parent."  *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted, alteration in original).

Respondent was a stay-at-home dad and took care of all of HW's and MW's needs.  There were never any complaints to CPS regarding respondent's parenting of HW or MW.  He participated in supervised parenting time after he was removed from the home, and those visits went well.  However, there were serious allegations against respondent concerning MS and ES, the children of respondent's wife.  There were years of complaints of physical abuse of MS by respondent, and the last incident in 2019 of MS having to wait outside in the cold for the bus.  The trial court found SE, respondent's sister-in-law, to be a credible witness, and concluded that respondent lied when he denied ever striking MS.  SE witnessed such an occurrence, as well as respondent lying to his wife about it.  A major issue for the court was the fact that respondent told the children not to speak to CPS.  This seriously concerned the court that the family would not be forthcoming in the future should any future incidents of abuse occur to MW or HW.  Additionally,

there were ES's allegations of sexual abuse by respondent when ES was very young in age. The trial court found ES to be a credible witness, and did not find either parent credible.

"[T]he doctrine of anticipatory neglect allows for an inference that a parent's treatment of one child is probative of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *Id*. There are some differences that decrease the probative value of the doctrine in this case. For instance, MS and ES are respondent's step-children, while MW and HW are his biological children. MS is the only male child of the group. MS has autism, and ES has mental health issues including depression, anxiety, and a history of hospitalizations for suicidal thoughts. There was no evidence that MW or HW suffered from any mental health problems. See *In re LaFrance Minors*, 306 Mich App 713, 730-731, 733; 858 NW2d 143 (2014) (the trial court erred in finding statutory grounds to terminate existed for three older children under the doctrine of anticipatory neglect where the youngest child had cerebral palsy, and there were no allegations of abuse against the older children); see also *In re Newman*, 189 Mich App 61, 71; 472 NW2d 38 (1991) ("We do not consider it appropriate to destroy a family's relationship with five children if the major problem appears to be the parents' inability to cope with one of them. . . ."). However, ES testified that the sexual abuse occurred when she was in fourth or fifth grade. Although MW and HW are younger than that right now, they will fast approach that age.

Although a close determination, the trial court considered the best interests of MW and HW under the doctrine of anticipatory neglect in terms of the allegations of physical abuse against MS and sexual abuse against ES, as well as several other factors, including but not limited to, respondent's failure to cooperate with CPS and instructing his children not to talk to the agency. Therefore, the trial court did not clearly err when it determined that termination of respondent's parental rights to MW and HW was in their best interests.

The supplemental order entered on remand terminating respondent's parental rights is affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly