*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN MARK JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 362432
Marquette Circuit Court
LC No. 20-058927-FC

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*) (sexual penetration of victim at least 13 but less than 16 years of age to whom the actor is related by blood or affinity), one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*) (sexual contact with victim at least 13 but less than 16 years of age to whom the actor is related by blood or affinity), second-degree child abuse, MCL 750.136b(3)(c), and third-degree child abuse, MCL 750.136b(5).[1] The trial court sentenced defendant to serve concurrent sentences of 10 to 30 years' imprisonment for his CSC-I conviction, 10 to 15 years' imprisonment for his CSC-II conviction, 5 to 10 years' imprisonment for his second-degree child abuse conviction, and 1 to 2 years' imprisonment for his third-degree child abuse conviction. We affirm.

## I. BACKGROUND

This case arises from the physical and sexual abuse of defendant's adopted twin daughters, ALJ and AMJ. Defendant and his wife adopted ALJ and AMJ in 2015, when they were approximately 10 years old, and ALJ and AMJ lived with defendant, his wife, and their three biological children.

---

[1] The jury acquitted defendant of three additional counts of CSC-I and two additional counts of CSC-II.

ALJ and AMJ testified at trial concerning several instances in which defendant harmed them while disciplining them. In one instance, when he learned that ALJ had been vaping, defendant punched her in the back of the head twice, causing her to fall to the floor. Defendant also "took [AMJ] to the floor" and kicked her when he discovered that she had hidden dirty dishes instead of cleaning them. Defendant punished ALJ and AMJ by spanking them with a wooden "board of education" and he hit them with an open hand on more than one occasion.

ALJ and AMJ also testified regarding an uncharged incident at a football game in which defendant became angry with ALJ for purchasing cotton candy instead of a candy apple. They testified that defendant dragged ALJ home by her hair and caused her head to hit a telephone pole along the way. When defendant and ALJ returned home, defendant hit her several times with the board and slapped her in the face. Neither ALJ nor AMJ reported this incident to the police before trial.

ALJ and AMJ each also testified concerning defendant's numerous acts of sexual abuse. On separate occasions, defendant penetrated both ALJ's and AMJ's vaginas with his finger while they lay next to him in his bed. Defendant also penetrated ALJ's vagina with his finger while she sat on his lap and watched television with him. AMJ testified that defendant frequently squeezed her breasts with his hands. During a voluntary interview with police, defendant admitted some incidents of sexual abuse but denied that his conduct had been for sexual purposes. Defendant also admitted some incidents of physical abuse.

## II. ANALYSIS

## A. JURY INSTRUCTION

Defendant argues that his trial counsel provided ineffective assistance by stipulating to the trial court's use of jury instructions in relation to the CSC-I and CSC-II charged offenses that permitted the jury to find a "relationship by blood or affinity" between defendant and his adopted daughters based on adoption. We disagree.

Whether counsel provided ineffective assistance presents a mixed question of fact and law; we review a trial court's factual findings for clear error and questions of law de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "[T]o obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted).

In claiming ineffective assistance of counsel, a defendant must identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court in turn evaluates "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018), overruled in part on other grounds by *People v Peeler*, 509 Mich 381 (2022)

(quotation marks and citation omitted). Defense counsel's decision not to raise an objection can often be "consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Id*. Further, defense counsel is not ineffective for failing to advocate a futile or meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). Trial strategy does not constitute ineffective assistance of counsel simply because it was not successful. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). Defendant must overcome a strong presumption of effective assistance of counsel. *Unger*, 278 Mich App at 242.

"A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citation omitted, alteration in original). "The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Id*. (quotation marks and citation omitted). Ordinarily, by expressly approving the jury instructions, a defendant waives review of the alleged instructional error. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Waiver extinguishes any error, meaning that there is no error to review. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Defendant appears to sidestep the waiver problem by arguing that his trial counsel provided ineffective assistance by stipulating to the CSC-I and CSC-II instructions. Regardless, his ineffective assistance argument fails.

Defendant was charged with four CSC-I counts of violation of MCL 750.520b, which provides in relevant part:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(b) That other person is at least 13 but less than 16 years of age and any of the following:

(*i*) The actor is a member of the same household as the victim.

(*ii*) The actor is related to the victim by blood or affinity to the fourth degree.

(*iii*) The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

Defendant also stood trial on three CSC-II counts of violation of MCL 750.520c, which similarly provides, in relevant part:

(1)  A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

* * *

(b)  That other person is at least 13 but less than 16 years of age and any of the following:

(*i*)  The actor is a member of the same household as the victim.

(*ii*)  The actor is related by blood or affinity to the fourth degree to the victim.

(*iii*)  The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

In this case, in the felony information and felony complaint filed on January 17, 2020, the prosecution alleged that defendant violated MCL 750.520b(1)(b) and that defendant violated MCL 750.520c(1)(b).  For each count, among the other elements alleged, the prosecution asserted that "defendant was related to the victim by blood or affinity to the fourth degree . . . ."  In the amended felony information filed June 6, 2022, the prosecution similarly alleged these same counts and asserted for each that "defendant was related to the victim by blood or affinity to the fourth degree . . . ."  Defendant's trial commenced on June 6, 2022, and concluded on June 9, 2022, with the jury's verdict as previously described.

At the time of defendant's trial, *People v Moss*, 333 Mich App 515; 963 NW2d 390 (2020), rev'd in part 509 Mich 253 (2022), held that a family relation arising from adoption constituted "blood or affinity" for purposes of criminal sexual conduct under MCL 750.520b to MCL 750.520e.  *Id*. at 519, 523-524.  *Moss* involved siblings, a biologically unrelated defendant and complainant who were adopted by a single woman.  When the complainant was 17 years old, the 25-year-old defendant entered the family home and sexually penetrated her.  Police arrested and charged defendant with two counts of CSC-III (sexual penetration with another person related by blood or affinity, and using force or coercion contrary to MCL 750.520d(1)(b)).  The defendant entered a no-contest plea to one CSC-III charge and the trial court accepted his plea.  After sentencing, the defendant moved to withdraw his plea on the ground that no factual basis supported his CSC-III conviction because adoptive siblings are not related by blood or affinity.  The trial court denied the motion and on appeal this Court held "that defendant and complainant are effectively related by blood, and so there was an adequate factual basis for defendant's no-contest plea."  *Id*. at 517-519.  This Court reasoned that

the familial relationship established by adoption is conclusive rather than presumptive.  The Adoption Code creates an unrebuttable familial relationship between children adopted into the same family.  By law, adoptive children effectively become the biological children of the adoptive parent, and the necessary implication is that the constructive biological relationship extends between adoptive siblings.  *Id*. at 522.

In this case, after discussion with the court, defendant's trial counsel agreed that under this Court's decision in *Moss*, the jury could be given jury instructions for the CSC-I and CSC-II charged offenses that incorporated the term "adoption" into the statutory element requiring proof concerning "blood or affinity." The trial court agreed that this Court's *Moss* decision controlled and applied to defendant's case making adoption a blood relationship for CSC-I and CSC-II purposes. The trial court, therefore, instructed the jury before they deliberated respecting the CSC-I and CSC-II charged offenses that, including the other elements, they were to determine if the prosecution proved beyond a reasonable doubt that defendant was related to ALJ and AMJ "by blood, adoption, or by marriage as father and daughter." On June 9, 2022, the jury found defendant guilty of one count of CSC-I and one count of CSC-II.

On June 10, 2022, our Supreme Court reversed *Moss*, holding that, for purposes of CSC-III, "adopted siblings who do not share a common ancestor are" . . . "not related 'by blood' under the statute." *People v Moss*, 509 Mich 253, 256; 984 NW2d 23 (2022). The Court explained: "A relationship formed by adoption does not arise by descent from a common ancestor or by birth. Therefore, under the ordinary meaning of the statutory language, individuals related by adoption are not related by blood." *Id*. at 261. The Court reasoned that this Court's concept of a "constructive biological relationship" . . . "enlarged the CSC-III statute and strained its interpretation, impermissibly creating a constructive crime as applied to this defendant and others similarly situated." *Id*. at 266. The Court, therefore, concluded that the defendant and the complainant were not related by blood or birth and reversed in part this Court's judgment and the trial court's denial of the defendant's motion to withdraw his plea because an adequate factual basis for defendant's plea did not exist. *Id*. at 267-268.

Although our Supreme Court's decision came after defendant's convictions, defendant argues that his trial counsel provided ineffective assistance by not anticipating our Supreme Court's reversal of this Court's *Moss* decision. Defendant claims that his trial counsel should have objected to instructing the jury despite the *Moss* precedent at the time of his trial. Defendant's argument suffers from failure to acknowledge that a "published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(C)(2). Further, he fails to recognize that the "filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." *Id*.

At the time of his trial, this Court's *Moss* opinion had precedential effect during defendant's trial, the jury's deliberations, and its rendering of its verdict. Accordingly, any objection by defendant's trial counsel to the inclusion of "adoption" in the jury instructions regarding the "blood or affinity" element for CSC-I and CSC-II offenses would have been meritless because binding precedent governed and guided such inclusion. Defendant's trial counsel, therefore, did not provide ineffective assistance by stipulating to the jury instructions regarding defendant's relationship with ALJ and AMJ, because the instructions were founded on precedent making any objection to the instructions meritless. See *Ericksen*, 288 Mich App at 201. Counsel's performance did not fall below an objective standard of reasonableness.

Even supposing defendant's trial counsel could and should have anticipated that our Supreme Court would reverse this Court's *Moss* decision, and hold that adopted persons are not related by blood, defendant cannot establish prejudice arising from his counsel's alleged error. See

*Head*, 323 Mich App at 539. This is so because the prosecution simply could have requested to amend the information to specify the theory that defendant and the victims were members of the same household.

"Both MCL 767.76 and MCR 6.112(H) authorize a trial court to amend an information before, during, or after trial." *People v McGee*, 258 Mich App 683, 686; 672 NW2d 191 (2003). While new offenses may not be added to an information through amendment, a trial court may allow the prosecution to amend the felony information unless amendment would cause "unacceptable prejudice to the defendant through unfair surprise, inadequate notice, or insufficient opportunity to defend." *Id*. (quotation marks and citation omitted); MCR 6.112(H). Had defense counsel successfully objected to the jury instructions, the prosecution could have requested that defendant's information be amended to charge the same offenses under different statutory subparts set forth in MCL 750.520b(1)(b)(*i*) and MCL 750.520c(1)(b)(*i*), on the grounds that defendant and ALJ and AMJ were members of the same household. See *McGee*, 258 Mich App at 686; MCR 6.112(H). An amended information would not prejudice defendant because it would not require a different defense or evidence, and would not surprise defendant. Defendant did not premise his defense on ALJ and AMJ's residence or relationship with defendant. Further, no dispute existed regarding defendant's, ALJ's, and AMJ's membership in the same household when defendant committed the charged offenses. Amendment of the information, therefore, would not have caused defendant "unfair surprise, inadequate notice, or insufficient opportunity to defend." See *McGee*, 258 Mich App at 690. Accordingly, even if we were convinced that his trial counsel performed deficiently as argued, defendant cannot establish prejudice that his counsel's performance affected the outcome of defendant's case warranting reversal. See *Head*, 323 Mich App at 539.

## B. OTHER-ACTS EVIDENCE

Defendant argues that ALJ and AMJ were improperly permitted to testify about the uncharged incident of domestic violence in which defendant became angry because ALJ purchased cotton candy at a football game, then led her home by her hair, caused her to hit her head on a telephone pole, and once home hit her with his hand and a board. Relatedly, defendant also argues that his trial counsel provided ineffective assistance by failing to object to admission of this other-acts testimony.

"Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018) (quotation marks and citation omitted). The defendant bears the burden of persuasion, and to obtain appellate relief, must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks omitted).

Defendant's argument predominantly asserts that the prior bad acts evidence was not admissible under MRE 404(b). The prior acts at issue and the child abuse charges, however, clearly constituted domestic violence because defendant, ALJ, and AMJ resided in the same

household, and defendant's conduct entailed assaultive behavior or the causing of physical or mental harm. MCL 768.27b, therefore, governed the admission of the prior acts evidence, not MRE 404(b). To the extent that defendant's argument is based on MRE 404(b), it is rejected.

MCL 768.27b, which applies in cases involving domestic violence or sexual assault, provides in relevant part:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.
>
> (2) If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown.
>
> * * *
>
> (6) As used in this section:
>
> (a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:
>
> (*i*) Causing or attempting to cause physical or mental harm to a family or household member.
>
> (*ii*) Placing a family or household member in fear of physical or mental harm.
>
> (*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.
>
> (*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>
> (b) "Family or household member" means any of the following:
>
> * * *
>
> (*ii*) An individual with whom the person resides or has resided.

MCL 768.27b allows the prosecution to offer evidence of a defendant's other acts of prior domestic violence or sexual assault when the defendant is charged with domestic violence or

sexual assault, even for purposes of showing propensity, provided that the evidence is relevant[2] and does not violate MRE 403,[3] and that the prior act took place not more than 10 years before the charged offense. See *People v Rosa*, 322 Mich App 726, 732; 913 NW2d 392 (2018); *People v Daniels*, 311 Mich App 257, 272-273; 874 NW2d 732 (2015) (explaining that other-acts evidence can be admitted under MCL 768.27b because a complete picture of defendant's history sheds light on the likelihood that he committed a given crime).

The other-acts testimony introduced in this case related to a prior act of domestic violence by defendant against ALJ, a member of defendant's household. See MCL 768.27b(6)(a)(*i*)-(*ii*). When asked by the prosecution whether she ever saw defendant hit ALJ, AMJ responded that she remembered defendant dragged ALJ home from a football game by her hair. When the prosecution asked ALJ about instances when defendant hit her with the board, ALJ described the football game incident and stated that defendant grabbed the top of her jacket and her hair, led her home, and kind of bashed her into a telephone pole near home. ALJ's and AMJ's testimony could have been properly admitted as a prior instance of domestic violence under MCL 768.27b. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). ALJ testified that this and other incidents affected how she responded to defendant's abusive conduct. The testimony shed light on the likelihood that defendant committed the charged child abuse offenses by revealing that defendant abused ALJ on other occasions and that ALJ and AMJ did not disclose their abuse out of fear, making it highly relevant to defendant's charged offense of third-degree child abuse of ALJ.

Because MCL 768.27b is subject to the MRE 403 balancing test, if challenged, courts must consider whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or other considerations. MRE 403; *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010). "All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). As previously discussed, the evidence of defendant's physical abuse of ALJ was relevant and highly probative respecting defendant's abusive conduct toward ALJ. The evidence demonstrated that defendant committed other acts of domestic violence around the time of the physical abuse he committed against ALJ and AMJ which gave rise to the charged offenses of child abuse. ALJ's and AMJ's testimony about the uncharged incident

---

[2] " 'Relevant evidence' " means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

[3] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. See ___ Mich ___ (2023). Although substantively the same rule, MRE 403 now states as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

presented nothing more shocking than their testimonies about defendant's other physical abuses, such as defendant punching them in the head, kicking them while on the floor, or hitting them repeatedly with a board. Further, the jury heard defendant's interview with police in which he admitted to punching and kicking AMJ and punching ALJ.

The record indicates that the jury asked the trial court to clarify what conduct made up defendant's third-degree child abuse charge concerning ALJ. The court listed different events mentioned in ALJ's and AMJ's testimony, but it excluded the uncharged football game incident. The record does not demonstrate that the jury gave the other-acts evidence unfair weight or that it created an impermissibly high risk of juror confusion. See *Sharpe*, 502 Mich at 333; MRE 403. The prior acts evidence revealed defendant's abusive history and character, highly relevant to his credibility, motivation, and intent relative to the charged child physical abuse offenses. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion, or other concerns specified under MRE 403.

In his appeal brief in cursory fashion, defendant states that the prosecution did not give notice as required under MCL 768.27b(2) that it intended to use prior bad acts evidence. The prosecution does not dispute that it failed to give defendant prior notice that it would elicit ALJ's and AMJ's testimony about the football game incident. Because the issue was not preserved by defendant, our review is for plain error affecting substantial rights, requiring a showing of prejudice, that the error was outcome-determinative, as well as a showing of actual innocence or, independent of innocence, that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Carines*, 460 Mich at 763-764.

While failure to provide such notice constitutes plain error, "it may be deemed harmless and therefore not grounds for reversal." *People v Lowrey*, 342 Mich App 99, 117; 993 NW2d 62 (2022) (citation omitted). In *People v Hawkins*, 245 Mich App 439, 453-455; 628 NW2d 105 (2001), this Court explained the purpose of the notice requirement:

> (1) to force the prosecutor to identify and seek admission only of prior bad acts evidence that passes the relevancy threshold, (2) to ensure that the defendant has an opportunity to object to and defend against this sort of evidence, and (3) to facilitate a thoughtful ruling by the trial court that either admits or excludes this evidence and is grounded in an adequate record. [*Id*. at 454-455.]

This Court held that, although the prosecution's failure to provide notice constituted plain error, the error was not the sort that required reversal because the other-acts evidence was relevant and admissible, not outweighed by unfair prejudice. This Court clarified that, because the evidence was admissible, notice to the defendant would not have had any effect on the trial court's decision to admit it at trial, regardless of arguments that could have been articulated following notice. This Court explained that "this case does not invoke the Supreme Court's concern that, without notice, the prosecutor was able to use irrelevant, inadmissible prior bad acts evidence to secure [the defendant's] conviction." *Id*. at 455. This Court also noted that the defendant provided no explanation for how he would have reacted differently to the other bad acts evidence had the prosecution given notice. Consequently, this Court could not conclude that the lack of notice had any effect whatsoever. *Id*.

In this case, defendant failed to object to the absence of proper notice at trial and fails to provide on appeal any argument as to how he would have proceeded differently had the prosecution provided notice. Because ALJ's and AMJ's testimony was relevant and properly admitted under MCL 768.27b and MRE 403, and because defendant has failed to establish or even argue how he would have proceeded differently with notice of the testimony, defendant cannot establish that the error affected his substantial rights so as to warrant reversal. The record does not indicate or even suggest that the prosecution attempted to rely on an improper purpose to justify admitting the evidence. While lack of notice may be adequate to warrant reversal in some cases, the lack of notice in this case had no significant effect, either alone or in concert with other factors, to warrant reversing defendant's conviction or grant him a new trial. See *Hawkins*, 245 Mich App at 456.

Defendant also argues that defense counsel provided ineffective assistance by failing to object to this testimony at trial. "We dispense with an in-depth analysis of this argument in light of our conclusion that this evidence was admissible. A trial attorney need not register a meritless objection to act effectively." *Id*. at 256-257. Defendant's trial counsel did not provide ineffective assistance by failing to making a meritless objection to ALJ's and AMJ's testimony. See *Ericksen*, 288 Mich App at 201. As we have previously discussed, the other-acts evidence was properly admitted under MCL 768.27b as a prior act of domestic violence relevant to matters at issue in this case and not unfairly prejudicial to defendant. Moreover, the record indicates that defendant's trial counsel chose not to object to the other-acts testimony and instead used it to challenge AMJ's credibility by questioning her why she never told the police about the incident and essentially intimated that she fabricated the story at trial. The decision to utilize testimony to challenge a witness's credibility rather than objecting to such evidence is a legitimate trial strategy. See *Unger*, 278 Mich App at 242. Utilizing such strategy did not make it ineffective assistance simply because the strategy proved unsuccessful. See *White*, 331 Mich App at 149. Therefore, we are not persuaded that defendant's trial counsel's performance fell below an objective standard of reasonableness or that he suffered prejudice, i.e., that the error was outcome-determinative.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica

-10-